# GREN v. NORTON et al.

No. 7341.   Decided December 27, 1949.   (213 P. 2d 356.)

Rehearing Denied March 27, 1950.

See 61 C. J. S., Motor Vehicles, sec. 459. Automobiles, motorist having right of way at intersection chargeable with lookout, see note, 89 A. L. R. 838. See, also, 5 Am. Jur. 667.

*Skeen, Thurman & Worsley,* Salt Lake City, for appellants.

*R. L. Tuckett,* Provo, *Clair M. Aldrich,* Provo, for respondent.

LATIMER, Justice.

This is an action by the survivors of Melvin V. Gren, deceased, to recover for his wrongful death caused by a collision between an automobile owned and operated by him and a large trailer-type truck owned by defendant, Merritt Norton, and operated by his son, defendant Preston L. Norton.

The accident occurred at the intersection of Twelfth North and Fifth West Streets in Provo, Utah. Fifth West is an arterial four-lane highway running generally in a northerly-southerly direction and is the principal highway for the fast moving traffic traveling north and south in and out of Provo, Utah. The overall width of this highway from the east edge of the paved portion to the west edge of the paved portion immediately north of the intersection is 66½ feet. The highway is divided both north and south of the intersection by a safety zone approximately 22 feet wide. There are two lanes for traffic on each side of the central zone and each of these lanes is 11 feet wide. The safety zone is an oval curved "island" type built up approximately 6 inches above the surface of the highway.

Twelfth North is a two-lane highway which approaches Fifth West from the east at approximately 90 degrees. Across Fifth West to the west and slightly to the north of the intersection of Twelfth North is an old two-lane highway running into Fifth West Street from a northwesterly direction. A motorist driving west on Twelfth North Street desiring to proceed along the old highway on the west must drive slightly to the northwest in crossing Fifth West Street. Traffic approaching the intersection from the east along Twelfth North Street is controlled by a stop sign located some 44 feet east of the east concrete edge of Fifth West Street. The distance from this stop sign to the west edge of the paved portion of Fifth West street is 110.5 feet and the estimated point of impact is approximately 108 feet from the sign.

From the intersection to the north, Fifth West Street continues on a level for approximately 2,265 feet and then rises gradually before again leveling out at a point approximately one mile north of the intersection. The highway curves slightly to the northwest when viewed by one standing at the intersection and looking to the north. The posted speed limit from the intersection northward for a distance of approximately 775 feet is 40 miles per hour and from that point north 50 miles per hour.

On the day of the accident, July 28, 1946, at about 4:30 P. M., defendant Preston L. Norton was driving the truck south along Fifth West Street toward the intersection. The vehicle was a large semi-trailer type truck, heavily loaded with lumber, weighing approximately 26 tons. At the same time decedent approached the intersection from the east along Twelfth North Street in a Chevrolet sedan. The defendant driver testified he first saw decedent's automobile as it was moving between the stop sign and the east edge of the concrete strip of the intersection; that at this time he was approximately 250 feet north of the intersection; that he then tested his air brakes and sounded his air horn,

which was of greater intensity than the usual automobile horn; that he expected deceased to stop in the safety zone and wait until the truck had cleared; that the deceased's car proceeded across the intersection in a straight westerly direction at constant rate of speed which he estimated to be between 5 and 10 miles per hour; that he could observe the decedent personally from the time his truck was about 100 feet north of the intersection to the point of impact; that deceased drove his automobile slumped down in his seat with his head straight forward until just before the impact; that when the sedan was about 10 feet east of the point of collision deceased appeared to look up and try to turn his automobile to the left to avoid a collision; that this was the first time deceased appeared to have become cognizant of the approach of a truck; that when he, the driver, was approximately 100 feet north of the intersection he decided decedent was not going to stop; that he immediately set his brakes, sounded his horn continuously to the point of impact, and edged his truck westward in an attempt to avoid a collision; that his truck was traveling about 40 miles per hour until he applied his brakes and that he had slowed his speed down to between 20 and 35 miles per hour just prior to impact.

Two eye-witnesses, not parties to the action, testified decedent's car proceeded into and across the intersection at a slow, constant rate of speed. Both observed the deceased slumped down in the seat of the car with his head straight forward. While both testified that deceased did not appear to change his position until immediately before the impact, they admitted their observations of him might not have been so continuous or careful that they could say with certainty that he did not turn his head sufficiently far northward to observe the approach of defendant's truck.

All witnesses to the accident or to the movement of deceased's car immediately prior thereto testified that the car continued across the intersection at a low and constant

rate of speed without any appreciable change in speed or direction until just before the impact. While the estimated speeds varied, all witnesses described the movement of the car as relatively slow and all were impressed with the apparent lack of action on the part of deceased as the cars approached each other.

Based upon the debris, markings on the highway, and the physical evidence appearing at the scene of the collision, it was concluded by investigating officers that the point of impact was 2 feet 9 inches east of the west edge of the concrete. Due to the fact that the sedan was underneath defendant's truck after the impact it was impossible to determine which part of deceased's car had first come in contact with the truck.

The first error assigned by appellants is that the court erred in refusing to grant their motion for a directed verdict for the reason that the decedent was guilty of contributory negligence as a matter of law. In support of this contention the defendants rely largely upon two recent decisions of this court, namely *Hickok* v. *Skinner*, 113 Utah 1, 190 P. 2d 514, and *Bullock* v. *Luke et al.*, 98 Utah 501, 98 P. 2d 350.

In the *Hickok* v. *Skinner* case, supra, plaintiff, after stopping at a stop sign controlling traffic entering an arterial highway, observed defendant's automobile approaching on an intersecting highway from plaintiff's right at a distance estimated to be between 400 and 500 feet from the intersection. Believing he had ample time to proceed in safety, plaintiff entered the intersection and drove better than three-fourths of the way across without ever looking again in the direction from which defendant was proceeding. The width of the arterial highway in that case was 65 feet and the stop sign was located some 20 feet away from the intersection. No facts existed to justify plaintiff's failure to look again in the direction of defendant's approaching automobile and under those circumstances we

held that the plaintiff in that action was negligent as a matter of law. The rule we announced was that while plaintiff had the right-of-way over defendant when he started into the intersection he was not permitted, after observing defendant's approaching automobile, to ignore it completely thereafter.

In the case of *Bullock* v. *Luke et al.,* supra, which involved an intersection accident between a motorcycle and a truck, there were no stop signs or traffic signals controlling traffic along either street but plaintiff's unobstructed view along the street defendant was traveling and in the direction from which he came was approximately 200 feet when plaintiff was within 60 feet of the intersection and 800 feet when he was within 20 feet of the intersection. Plaintiff failed to see defendant until he had reached a point within 20 feet of the intersection and we there held that his failure to see the defendant sooner was negligence as a matter of law.

It is undisputed in this case that as deceased entered the intersection he had an unobstructed view of Fifth West Street to the north for about one mile. Under the rules announced in the cases previously mentioned he is charged with being aware of the approach of defendant's large trailer truck. In traversing the intersection deceased was traveling slightly to the north of west and by merely glancing to his right he could see all traffic which was within one-half mile of the intersection coming south on Fifth West Street. Undoubtedly, at the time he stopped at the stop sign defendant's truck was some considerable distance north on the highway and deceased could then have reasonably concluded it was not close enough to constitute an immediate hazard. His negligence, if any, was not in starting into the intersection. If he can be charged with negligence, as a matter of law, it is because of his failure to look for approaching traffic or observe defendant's truck after he entered into and upon the main traveled portions of the highway and before he started

across the west portion. He had ample time to make observations to the north. It is some 108 feet from the place where deceased stopped to the place where the collision occurred. If we accept the testimony most favorable to the deceased, defendant's truck was traveling at a speed between 50 and 55 miles per hour. This would figure approximately 80 feet per second, so that it would require approximately 25 seconds for the truck to travel the 2,200 feet, which, according to the testimony, is relatively level. There is no reason why, during this whole period, the truck could not have been observed by deceased had he been keeping any lookout.

There is some contention made that the jury could have concluded that deceased saw the approach of defendant's truck, concluded he had the right-of-way and estimated that he could clear the crossing prior to the time the defendant reached the intersection and that such estimate would only be an error in judgment and would not charge deceased with being guilty of negligence as a matter of law. It is further contended in this connection that deceased is entitled to a presumption that he used due care for his own safety and that due care presumes he saw the approach of the truck and concluded that he could pass through the intersection in safety. These contentions might bear merit if the facts did not establish contrary conclusions. The deceased had approximately 88 feet to travel from the stop sign until he reached the place where his movement might be imperiled by traffic proceeding south along the west side of the highway. After reaching this safety area he would no longer be concerned with the movement of any vehicles traveling north and so he could concentrate his attention on the movement of traffic to the south. As he was passing between the lanes of north-bound and south-bound traffic he had approximately 22 feet of safe space and at the speed he was traveling he was afforded a reasonable opportunity to make observations to the north. There was no other traffic with which he need concern himself.

His actions, as testified to by the witnesses, seem to indicate that he had abandoned all precautions for his own safety. He could not have made an estimate of the distance the defendant was from the intersection when deceased attempted to pass from the safety zone into the traffic lanes on the west as the size of the truck, its immediate proximity to the intersection and the noise of the horn, which the witnesses claim was operating, all argue strongly against the possibility of the deceased concluding he could pass over the west lanes ahead of the truck. Moreover, unless deceased was oblivious to the approach of the truck he would not have remained immobile and motionless and would have taken some action to avoid the collision. It is inconceivable that a person would see a fast moving truck coming down a highway, estimate he could clear ahead of the vehicle, and yet fail to further observe its movements, fail to reappraise the situation, fail to increase or decrease the speed of his car or change his course of travel, or to take any action to avoid a collision until 10 feet away from a point of impact, particularly when there was no necessity of observing the movement of other vehicles, when there was no obstruction of vision, when visibility was good and when the horn of the truck was blowing for at least 100 feet and the tires were dragging for 55 feet. The physical evidence and deceased's acts and conduct were such that any presumption of due care has been destroyed. One look to the north at any time after deceased cleared the east lanes would have apprised a reasonably careful driver that the movement across the west lanes would not be made in safety.

As we held in the *Hickok* v. *Skinner* case, supra, the fact that the statute gives a motorist a right-of-way into an intersection does not permit him to proceed across without observing the movement of other vehicles which may be moving into and across the intersection. This is particularly so where the arterial highway is divided. The drivers of fast moving vehicles on the far side of a divided arterial highway very often have little opportunity

to observe whether cars stop at stop signs some distance back from the lanes of traffic. The stop sign has more relative importance to vehicles moving on the near side, and it is most difficult for both the driver entering an intersection and the driver proceeding on the far side of the highway to determine how close a car need be to constitute an immediate hazard. However, a motorist crossing a divided intersection has an opportunity after crossing over the near portion of the highway to re-appraise the proximity of traffic moving on the far side and has an opportunity to make his observations without interfering with the movement of other traffic. In this particular instance deceased was traveling at a slow rate of speed, should have seen the truck approaching, and could have stopped his car in a very short distance. He should not be charged with avoiding defendant's negligence but he is required to maintain a reasonable lookout for his own safety.

There is evidence in the record which would indicate that deceased's faculties of sight, hearing, and perception were impaired. Appellants contend that the impairment influenced his driving to such an extent that he could ▪ not drive with due care, caution and circumspection. We need not pass on this contention in view of our conclusion that deceased in failing to keep a proper lookout was guilty of contributory negligence as a matter of law.

The remaining question is as to the propriety of the trial court's instruction on the doctrine of the last clear chance. It has oft been held by this court that the doctrine is of limited application in cases involving two moving vehicles. The soundness of this rule is apparent when ▪▪ it is appreciated that the doctrine only applies when the defendant has reasonable time and opportunity to avoid the accident. Stated in another way, the plaintiff only escapes the consequences of his own negligence when the defendant has a clear chance to avoid the accident. The instant case is one in which the doctrine should not have been ▪

applied. The truck was being driven at a speed of some 40 to 55 miles per hour until the driver applied the brakes some distance north of the point of impact. From the speed of the deceased's car and the safety zone east of the west lanes, a driver along the arterial highway might reasonably conclude that the driver crossing would not enter the danger area with the truck in close proximity to the intersection and the crossing vehicle would not be in a danger place until he had passed from behind the safety island. After it became apparent that deceased was going on across the west lanes, the defendant driver used every reasonable effort to avoid the collision, including edging his truck off the westerly edge of the highway, blowing his horn, and dragging his wheels. When it became apparent that the deceased was proceeding into a position of danger, time did not permit the truck driver the last clear chance to avoid the collision.

We believe the following language from *Hickok* v. *Skinner*, supra, is apropos [113 Utah 1, 190 P. 2d 517]:

"The last clear chance doctrine, relied on by plaintiff, is inapplicable in the present instance. As has been repeatedly announced by this court, this doctrine is of limited application in the case of two moving vehicles. If plaintiff were moving at a slow rate of speed, defendant would not have known plaintiff was in a place of danger until the latter had crossed the center line of 21st South Street. It is not unusual for drivers crossing a wide arterial highway such as this to proceed across the near half of the street and then stop or come to a near stop near the middle to permit the passage of through traffic on the other half. The evidence having established 45 mph as the speed of defendant's car, his opportunity to avoid the collision would be extremely limited. Under the facts of this case it cannot be said that defendant had a clear chance to appreciate plaintiff's predicament and to avoid the collision. The faster plaintiff was travelling, the closer defendant's car would be to the point of impact, and the less chance defendant would have to take effective measures to avoid colliding with plaintiff's car. * * *"

The judgment is reversed, costs to appellant.

PRATT, C. J., and WADE, WOLFE and McDONOUGH, JJ., concur.