## LOWDER v. HOLLEY et al. (two cases).

No. 7486.   Decided June 19, 1951.   (233 P. 2d 350.)

See 61 C. J. S., Motor Vehicles, sec. 518. Intersection, collision at. 5 Am. Jur., Automobiles, sec. 431; 47 A. L. R. 595.

*Brockbank & Paxman,* Provo, *Elias Hansen,* Salt Lake City, for appellants.

*Don J. Hanson,* Salt Lake City, *George S. Ballif,* Provo, for respondents.

WADE, Justice.

Amasa Lowder and Alene Lowder brought two separate actions against Ruth and John Holley for damages sustained in an automobile collision between them and a pickup truck driven by Ruth Holley. The actions were consolidated for trial and tried by the court sitting without a jury.

The court found in favor of the plaintiffs and defendants appeal from the judgments in both actions.

Appellant, Ruth Holley, the driver of the pick-up truck involved in the collision was a minor 16 years of age at the time of the accident and did not have a driver's license. Appellant, John Holley, is her father and the owner of the truck. His liability is predicated on the provisions of Section 57-4-26, U. C. A. 1943, which makes every owner of a motor vehicle who knowingly permits a minor under the age of 18 years to drive a motor vehicle upon a highway or any person who gives or furnishes such a vehicle to a minor liable for damages caused by negligence of the minor in such driving.

Appellants attack the sufficiency of the evidence to support the court's findings that Ruth Holley was negligent or that her negligence was the proximate cause of the damages and injuries and assert that the court erred in not finding as a matter of law that respondent, Amasa Lowder, the driver of the car, was guilty of contributory negligence.

Reading the record in the light most favorable to respondents, as we must do since the trier of the facts found in their favor, it appears that on May 30, 1947, Decoration Day, at about 6:30 P. M. Amasa Lowder, one of the respondents herein, accompanied by Alene Lowder, his wife, and the other respondent herein, and two of their small children, was driving his 1937 Pontiac sedan westerly along a willow and tree lined graveled road running in an east-west direction situated in Mapleton, Utah. This road was rough, wet, and not very wide and he, therefore, did not drive more than twenty miles an hour until he approached a place where this road intersected with another road running north and south at which time he slowed down to approximately 5 to 10 miles per hour and as he reached the intersection, Amasa Lowder looked north and south but did not observe any cars in either direction. From the intersection when Amasa Lowder looked he could see up to a house located about 40 rods northwest of the intersection but his

view of road north beyond the house was obstructed by an orchard north of it. Having looked he entered the intersection and the read end of his car had passed about three feet beyond the center line of the traveled portion of the north-south road when it was hit on its rear right side by a light Terraplane pick-up truck being driven south by Ruth Holley along the north-south road. The north-south road with which the east-west road intersected was also a graveled road and was 54 feet wide from fence line to fence line. Heavy black gouge marks left by the tires of the pick-up truck in the gravel north of the point of impact indicated that Ruth Holley applied her brakes about 30 feet before the collision and then after the collision her truck had traveled about 75 feet across the intersection on the east side going south and Amasa Lowder's car was shoved about 25 feet across the road to the southwest corner of the intersection. The officer investigating the accident testified that from the physical facts disclosed he was of the opinion that the driver of the pick-up truck was traveling at the rate of about 40 to 50 miles per hour. Although Ruth Holley testified that she was only driving at the rate of 30 miles an hour she admitted that she didn't look east of the intersection until she was almost at the intersection and then her view was obstructed by a pile of dirt and she couldn't see anything. She further testified that as soon as she observed Amasa Lowder's car in the intersection she applied her brakes.

From what we have outlined above, although there was no evidence that Ruth Holley drove in excess of 50 miles per hour, as the court as the trier of the facts found, the evidence was clearly sufficient for the trier of the facts to reasonably find that she was driving at about ■ 50 miles per hour and could reasonably find, as it did, that she failed to keep a lookout and failed to yield the right of way to Amasa Lowder's car which was already in the intersection and had almost reached the west side of it before her car entered the intersection and that this

negligence of Ruth Holley was the proximate cause of the collision.

Appellants strenuously argue that respondent Amasa Lowder's contributory negligence precludes both him and his wife from any recovery for damages and injuries. They argue that he failed to look and see Ruth Holley's truck before he entered the intersection and had he looked he would have seen the truck and it would have been his duty to refrain from entering the intersection until he could do so safely. Appellants are correct in stating that before entering an intersection the driver of a car must look and determine whether it is safe to enter. However, under the facts as the court found them, had Amasa Lowder observed the truck just before he entered the intersection he would have been justified in considering it safe to enter because at that point, if the truck was being driven at the rate of 50 miles per hour, and Amasa Lowder was driving at from 5 to 10 miles per hour, as the trier of the facts could reasonably have found, then the truck would have been at least 250 feet from the intersection since his car had traveled almost the entire distance across the intersection before the impact, and this being so he could have assumed and acted on the assumption that the driver of the truck would exercise ordinary and reasonable care in its driving and that it would be safe to cross the intersection. Had Ruth Holley exercised such reasonable and ordinary care the collision would not have occurred. Under such a state of facts Amasa Lowder's failure to see the truck could in no way have contributed to the accident. The court, therefore, did not err in finding that Amasa Lowder was not contributorily negligent.

In attaching liability to John Holley, the other appellant herein, who was the owner of the truck and the father of Ruth Holley, the court found that she had been driving the truck with his implied consent, knowledge and permission. Appellants contend that such a finding was insuf-

ficient to attach liability to the owner of the car under the provisions of Section 57-4-26, U. C. A. 1943 which reads:

"Every owner of a motor vehicle causing or knowingly permitting a minor under the age of eighteen years to drive such vehicle upon a highway, and any person who gives or furnishes a motor vehicle to such minor, shall be jointly and severally liable with such minor for any damages caused by the negligence of such minor in driving such vehicle."

They contend that such a statute being in derogation of the common law should be strictly construed, and "implied consent, knowledge and permission" cannot strictly satisfy the statutory requirements of "knowingly permitting" a minor to drive such vehicle. Appellants cite *Weber* v. *Pinyon,* 9 Cal. 2d 226, 70 P. 2d 183, 112 A. L. R. 407 as typical of cases holding that statutes which create liability upon the owner of a chattel which was unknown at common law must be strictly construed. The answer to that argument is that it completely ignores the mandate of Section 88-2-2, U. C. A. 1943, that the common law rule that statutes in derogation thereof must be strictly construed has no application in this state and that our statutes must be liberally construed to effectuate their objects and to promote justice. The obvious intent of the legislature was to protect innocent third parties from the negligence of minors to whom cars are furnished or who are permitted by the owners of the cars to drive them, by holding the owners responsible therefor. In most instances actual permission by the owner to the minor to drive the car is impossible of direct proof. It is, of course, in the interest of the owner after an accident to deny such permission. It is not necessary, therefore, in order for a plaintiff to establish a case against an owner of a car to prove that express consent to drive the car was given to the minor. It may be implied from past conduct. In *Bridges* v. *Welzien,* 231 Iowa 6, 300 N. W. 659, on page 661 of the N. W. Reports, the court in that case in discussing the problem of proof of consent by an owner under a statute

making the owner liable for the negligence of one driving the car with his consent said:

"* * * the defense of non-consent is one that can easily be made, with little probability that it can be met with direct refutation. It is not necessary that the plaintiff adduce such direct testimony. When the ownership of the motor vehicle is admitted, as it is in this case, a prima facie case is made on this issue by the plaintiff, or as it is sometimes expressed an inference, or a presumption is created that the vehicle was being operated with the consent of the owner, and there must be sufficient showing to the contrary if the owner would avoid that finding. The plaintiff may aid this inference of law by direct evidence and by proof of facts and circumstances from which inferences may be drawn. As we have said, this inference is not a strong one, and it in no way changes the burden of proof. The owner may oppose the inference by such admissible testimony as may be available to him. But such testimony, though positive and direct, is not necessarily conclusive. It may be weakened or rebutted by facts and circumstances, or by its own inherent weakness or unreasonable character. The weight of the testimony and the credibility of the witnesses depend upon the facts and conditions as shown by the record in each case. This particular issue, as it comes before the courts, is one which the average jury is peculiarly well fitted to pass upon and arrive at a correct conclusion."

In *Abbs* v. *Redmond,* 64 Idaho 369, 132 P. 2d 1044, the Idaho Supreme Court, under a statute almost identical with our own cited with approval the holding in *Bridges* v. *Welzien,* supra, that it is not necessary for a plaintiff to establish express consent of the owner of the particular trip on which the accident had occurred. That such consent may be implied from past conduct. In the Idaho case an instruction which told the jury that consent could not be presumed or implied from the owner's consent on previous occasions to the taking or driving of the car, was held to be prejudicial error.

Appellants further argue that even though under our statute implied consent would be sufficient to attach liability to the owner of the car yet the evidence was insufficient to sustain such a finding.

John Holley testified that he never at any time gave Ruth permission to drive the truck and that on the day of the accident he left early for his work at the gas station which he operated and did not see Ruth until after the accident when she came and told him about it. Ruth testified that her father had never given her permission to drive the truck and on the occasions when she had asked for such permission he had refused because she did not have a driver's license. A cousin and another girl friend of Ruth's testified that they had been present on occasions when Ruth had requested permission from her father to drive the car but was refused because she didn't have a license to drive. Opposed to this there is evidence in the record that Ruth had learned to drive a car about 4 years prior to the accident and that she had driven the Terraplane truck involved in the collision on a number of occasions. At the time of the accident the only ones living at home were John Holley, his wife, his daughter Ruth and a younger daughter about 12 years of age. His wife and the younger daughter did not drive. Mr. Holley owned more than one vehicle. The Terraplane truck involved was left at home in the driveway near the street on the day of the accident. No keys were needed to start this truck, all that was needed was to turn on the ignition switch. Two officers who investigated the accident testified that both John and Ruth Holley told them he knew she drove the truck and that he allowed her to do it.

The court was fully justified in concluding from this evidence that Ruth Holley was driving the truck at the time of the accident with the implied consent, permission and knowledge of her father. This consent and knowledge must be implied because there is no direct proof but the circumstances must be such that the trier of the facts is justified in finding that there was actual knowledge and consent. The type of situation we have here, where liability is imposed upon the owner of a vehicle who permits a minor to drive it, in proving the

permission, is analogous to the situation where a principal is sought to be held for the acts of his agent. The Colorado court in *Moore* v. *Switzer,* 78 Colo. 63, 239 P. 874 on page 875 of the Pacific reports aptly states the rule on the proof where the authority of the agent is denied, and there is no evidence of express authority, as follows:

"* * * Implied authority of an agent is actual authority evidenced by conduct, that is, the conduct of the principal has been such as to justify the jury in finding that the agent had actual authority to do what he did. This may be proved by evidence of acquiescence with knowledge of the agent's acts, and such knowledge and acquiescence may be shown by evidence of the agent's course of dealing for so long a time that knowledge and acquiescence may be presumed. * * *"

In the instant case circumstances from which the trier could reasonably presume that the father, John Holley had actual knowledge of and consented to his daughter Ruth driving the Terraplane truck were the facts that she was the only member of the family besides himself who could drive it and he left it readily available in a condition in which it could be easily used and had been so used by Ruth in a small community of which he had at one time been mayor. She having driven this car on a number of occasions in this place, it is reasonable to conclude that her father could not fail to be aware of such activities, and from the fact that no action was taken to stop this driving it can be assumed that it was done with his consent. This assumption is strengthened by both John and Ruth's statements to the investigating officers at the time of the accident that John knew that she drove the truck and permitted her to do so. We conclude, therefore, that the court as the trier of the facts was justified in finding that Ruth was driving the truck at the time of the accident with the implied consent, permission and knowledge of her father and that the evidence amply sustained such a finding.

Affirmed. Costs to respondent.

McDONOUGH and CROCKETT, JJ., concur.

LATIMER, J., not participating.

WOLFE, Chief Justice (concurring).

As the plaintiff approached the intersection, he looked in both directions, shifted into second gear and proceeded across at 5 to 10 miles per hour. Plaintiff had gone about two-thirds of the way across the intersection so that the front of his car had reached the fence line on the west side of the north south road, upon which defendant was approaching from the north, when plaintiff's car was struck in the right rear by defendant's truck. The investigating officer estimated that the defendant was traveling between 40 and 50 miles per hour, basing his opinion upon defendant's skid marks and the damage to both automobiles. Thus, the defendant was traveling approximately seven times faster than the plaintiff. Evidence concerning the presence of a dirt pile and an orchard which affected visibility was considered by the trial judge, sitting as the fact finder. Judgment was rendered for the plaintiff.

I believe the judgment should be affirmed because the great disparity in speed between these two automobiles places this case in the *Hess* v. *Robinson,* 109 Utah 60, 163 P. 2d 510 category rather than that of *Bullock* v. *Luke,* 98 Utah 501, 98 P. 2d 350. Although the road defendant was traveling is a better road permitting greater speed, there was no stop sign at this intersection. Both roads are gravel. Whether the plaintiff upon entering the intersection should have observed the defendant's car, which, could have been some 250 feet away, or if upon discovering it plaintiff reasonably could have assumed that he had the right of way and that the defendant would slow up to let him across are all questions of fact. Reasonable minds can and certainly do differ in such a situation as this. I cannot say there was error in the fact finder's conclusions.