## HARDMAN v. THURMAN et al.

No. 7609.   Decided December 26, 1951.   (239 P. 2d 215.)

See 61 C. J. S., Motor Vehicles, sec. 526. Right of way at intersections. 5 Am. Jur., Automobiles, secs. 289-299; 47 A. L. R. 599.

*Stewart, Cannon & Hanson, E. F. Baldiwn, Jr.,* and *Rex J. Hanson,* all of Salt Lake City, for appellant.

*McKay, Burton, Nielsen & Richards* and *George M. McMillan,* all of Salt Lake City, for respondent.

McDONOUGH, Justice.

Defendants appeal from a judgment on a verdict entered against them for wrongful death of Oswald C. Hardman arising out of a motor vehicle collision.

At about 9:30 p. m. on October 29, 1949, the decedent, Oswald C. Hardman, suffered fatal injuries when the automobile in which he was riding was struck by the trailer-truck owned by defendants in the intersection of State and

21st South streets in Salt Lake City. South of 21st South street, there are six traffic lanes, three for north-bound traffic and three for southbound traffic. North of said intersection there are four traffic lanes for vehicular travel, two for northbound traffic and two for southbound traffic. The Hardman car, owned by decedent, was being operated at the time in question by his wife. Mrs. Hardman driving in a southerly direction on State street intended to turn east on 21st South street. Her husband was riding in the front seat holding their small child. Mrs. Hardman drove in the lane next to the center of the street. As the light turned green at 21st South, she stopped momentarily to permit northbound traffic to proceed through the intersection. An oil tanker which was proceeding northward in the first lane east of the center of the street, stopped at the south line of the intersection, signaling for a left turn— to the west. A car in the second lane east of the center of the street which was proceeding northward, stopped as Mrs. Hardman started to turn to the left in order to proceed eastward. Mrs. Hardman observed no cars in the third lane to the east; but as the Hardman car reached a point where it would have been crossing the third traffic lane to the east assuming such lane had extended through the intersection to the north, the trailer-truck operated by defendants coming from the south in the third traffic lane to the east of the center line of State Street, crashed into the right side of the Hardman car driving it sideways across the intersection to the north curb. Oswald C. Hardman sustained injuries from which he died the following day. There were tiremarks from defendants' truck-trailer which indicated its course and also showed the distance the wheels or some of them skidded when the brakes were applied. There were various estimates as to the speed of defendants' trailer-truck as it entered the intersection ranging from 20 to 42 miles per hour. The speed limit on State Street south of 21st South street was 40 miles per hour and 35 miles per hour north of that intersection. A physicist, called to testify as an expert, on the basis of

testimony as to skid marks, estimated the speed of the trailer-truck at approximately 42 miles per hour at the time the brakes were first applied.

The driver of defendants' truck testified that the truck is 13 feet high; that the cab is elevated above the level of the seat of the ordinary passenger car, so that it is possible to see over the top of passenger cars; that the braking mechanism consists of air brakes and hydraulic brakes which were in good working condition; that when he first saw the Hardman car it was directly in his path; that he did not see it until the truck entered the intersection, and that he just had time to apply the brakes when the collision occurred. He further testified that he was traveling in the third traffic lane to the east of the center of the street; that in proceeding northward, he would have had to "ease over" into the second lane while crossing the intersection. He testified that he was driving at a speed of only 20 miles per hour at the time he reached the intersection, and that he was aware of the presence of a tanker in the first lane and another vehicle in the second lane. He estimated the gross weight of the truck and trailer loaded was about 63,000 pounds; and that when fully loaded the brakes do not lock. The truck and trailer has an overall length of 51 feet 3 inches.

Defendants seek reversal of the judgment below on the following grounds: (1) that the court erred in denying defendants' motion for a directed verdict since there is not evidence in the record to support a finding of negligence upon the part of the driver to defendants' trailer truck and that the evidence requires a finding that the driver of decedent's car was negligent. (2) That incompetent evidence was admitted. (3) That the court erred in refusing to give certain instructions requested by defendants.

The assignments directed at the lack of evidence of negligence upon the part of the driver of defendants' truck is over-ruled. The testimony of such driver was itself

such as to warrant the finding that he was driving negligently in the following particulars: (1) There ■ was some evidence in the record from which the jury could conclude that from the driver's elevated position in the cab of the truck he would be able to see the Hardman car as it proceeded to make a turn on Twenty-First South street. He admitted that he did not see it until after he got into the intersection. If he did not see the Hardman car, he was negligent by reason of being inattentive, and in proceeding into the intersection without ascertaining whether it was safe for him to proceed. (2) In traveling at an excessive rate of speed under the circumstances into the intersection. The evidence adduced relative to the speed of the truck, plus the fact that there was a car stopped to his left although the green light was showing southward, would indicate that it was not safe to proceed through the intersection. The fact that he was unable to bring his truck to a stop within 30 feet after application of the brakes, as required by Sec. 57-7-205 (b, c), would warrant a conclusion that he was traveling at a greater speed than 20 miles per hour. As evidence by the length of the tire marks, 126 feet, less the length of the trailer-truck, 51 feet, the truck moved forward about 75 feet from the point where the truck finally stopped. From the point where the brakes were applied to the point of impact, the truck moved about 30 feet, and from the point of impact the Hardman car was pushed sideways a little over 45 feet. (3) In failing to yield the right-of-way to a vehicle in the intersection in the act of turning in accordance with Sec. 57-7-137, U. C. A. 1943, which section we will have occasion to refer to in connection with the defendants' argument relative to negligence on the part of the driver of the Hardman car.

In support of their contention that Mrs. Hardman was guilty of negligence as a matter of law, defendants cite *French* v. *Utah Oil Refining Company,* 117 Utah 406, 216 P. 2d 1002, 1003, and *Cederloff* v. *Whited,* 110 Utah 45,

169 P .2d 777. They contend that the defendants' truck was in plain view of Mrs. Hardman, although the accident occurred at night, since the intersection was well lighted. They further argue that under the cited cases the defendants' truck had the right-of-way as a matter of law and that consequently Mrs. Hardman in failing to yield that right-of-way was negligent.

The instant case is readily distinguishable from the *Cederloff* and *French* cases. The collision in the *Cederloff* case happened between intersections. It was governed by Sec. 57-7-133, U. C. A. 1943, which provides:

"(a) No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety."

The gist of the court's opinion which held that the defendant was guilty of negligence as a matter of law is contained in the following excerpt found at page 778 of 169 P. 2d:

"Defendant turned his car from a direct course in the highway into the lane of traffic intended for vehicles traveling in the opposite direction at a time when plaintiff's car was approaching in such close proximity that the collision occurred as soon as the front end of defendant's car had reached a few feet into plaintiff's lane of traffic. Had plaintiff's car run into the rear end of defendant's car after the front end thereof had entirely crossed plaintiff's course of travel, there might have been some question whether the turn could be made with reasonable safety, but under the facts in this case it is clear that as a matter of law the turn could not be made with reasonable safety, and the defendant was guilty of negligence."

The *French* case was governed by Sec. 57-7-137, U. C. A. 1943, since the collision occurred within an intersection. That section provides:

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having been given a signal when and as re-

quired by his act, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn."

In the *French* case, the plaintiff driver who was held guilty of negligence as a matter of law, traveled northward into an intersection where he made a left turn. There were two lanes for south bound traffic on the west half of the street. Plaintiff observed defendant's truck either when he was entering the intersection or after he was somewhat into the intersection. It was then from 100 to 120 feet away. Plaintiff was traveling at the rate of some eight miles per hour. He made no further observation of the south bound truck which was traveling in the westernmost lane until it was practically upon him, although he had to traverse more than a full traffic lane before proceeding into the path of the oncoming truck. It was held that under the evidence it could not be found but that when the turn was made, the truck was so close to the intersection as to constitute an immediate hazard and as a consequence, the plaintiff had no legal right to proceed.

In the instant case, the jury might reasonably conclude that when the tanker truck stopped in the first lane east of the center of State Street and another motor vehicle stopped in the second lane, Mrs. Hardman was in the exercise of reasonable care in assuming that it was safe to proceed eastwardly. In view of the street plan at the intersection, it might reasonably be found that it was not unreasonable for her to not expect any through traffic on lane 3 in which defendants' vehicle was proceeding, since there are only two lanes for north bound traffic north of the intersection. She proceeded cautiously, and while she was crossing the first two traffic lanes she might well have been unable to see the defendants' vehicle since it would have been some distance south of the intersection when she first started to turn. Facing headlights of the two vehicles which were stopped to permit her to turn

safely to the left she might not have been able to see the top of the trailer-truck 13 feet above the pavement. Under these circumstances, the jury could reasonably find that she exercised due care. The evidence was such as to warrant a finding that she and not the defendants' driver had the right of way.

The evidence was such as to require submission of the case to the jury, consequently the court did not err in denying the motion for a directed verdict.

It is contended by the defendant that the trial court admitted incompetent evidence prejudicial to the defendant. The defendants claim that the testimony of a physicist who calculated the speed of the truck at 42.6 miles per hour at the time of the application of the brake, ■ based upon the markings on the pavement, was incompetent on the ground that the opinion assumed facts not in evidence, to wit: that the brakes were locked and that there was a sliding movement of the truck tires and that the wheels all skidded evenly. It is contended that his calculation was based upon these assumptions. However, the record is to the contrary. The physicist testified:

"If there is any mark that would be called a skid mark left at all, then I would say that you would be very safe in using the co-efficient of sliding friction."

He proceeded to explain why he so concluded. Since, as noted, the investigating officers gave testimony relative to skid marks on the pavement, there was evidence in the record upon which to base the hypothetical question.

Complaint is made of the admission in evidence of the testimony of the secretary of the corporation for whom the decedent worked relative to discussions between the witness and the board of directors dealing with Hardman's efficiency and his opportunities for advancement with the company. Conceding that his testimony in this respect is hearsay, we think no prejudice

resulted therefrom since the secretary of the company under whose immediate supervision Hardman worked, testified to his own knowledge of decedent's qualifications and the likelihood of his advancement with the company.

Defendant's final contention is that the court erred in not giving certain instructions requested by the defendants. We have carefully compared the requested instructions and the instructions given by the court and while it must be conceded that several of the requests denied correctly stated the law, nevertheless the substance thereof was given in the instructions of the court. Hence, it was not error to refuse the requests of defendant. The court adequately instructed the jury on all matters so as to correctly present the defendants' theory of the case. We find no prejudicial error.

The judgment is affirmed. Costs to respondent.

WOLFE, C. J., and WADE and CROCKETT, JJ., concur.

HENRIOD, J., did not participate.