## MARTIN v. STEVENS.

No. 7731. Decided May 1, 1952. (243 P. 2d 747.)

486

See 61 C. J. S., Motor Vehicles, sec. 527. Automobiles meeting at intersections. 5 Am. Jur., Automobiles, sec. 287 et seq.; 172 A. L. R. 1141.

*McCullough, Boyce & McCullough,* Salt Lake City, for appellant.

*Ray R. Christensen,* Salt Lake City, for respondent.

CROCKETT, Justice.

As Lynn W. Martin was driving south along 18th East through its intersection with Stratford Avenue, the de-

fendant coming along Stratford Avenue from the east, crashed into the middle of the left side of his car causing personal injury to plaintiff and damaging his automobile. At the trial, after plaintiff had presented all of his evidence, defendant moved for a dismissal upon several grounds, among which were:

"(4) The plaintiff's evidence * * * shows the plaintiff to have been guilty of contributory negligence which was a substantial poximate cause of the accident."

upon which ground the motion was granted.

Under the new Rules of Civil Procdure 41(b), unless the court otherwise specifies, such a dismissal is with prejudice and is a final judgment. The plaintiff assigns the ruling as error.

The sole question presented by plaintiff's appeal is whether he is prevented from recovering because he was guilty of negligence which proximately contributed to cause his own injury.

In appraising the dismissal which was granted against plaintiff, he is entitled to have us review all of the evidence, together with every logical inference which may fairly be drawn therefrom in the light most favorable to him.

Plaintiff left his home in Salt Lake City at about 7:00 a. m. on September 25, 1950, and drove south along 18th East approaching its intersection with Stratford Avenue, upon which defendant was approaching the intersection from the east. The weather and visibility were good and the roads dry. No traffic signals or signs control traffic there. The northeast corner of the intersection, across which these travellers would see each other, is blind in that there is a high fence along the west property line, and there are vines, bushes and trees which obscure the view. The width of asphalt surface of 18th East is 26 feet; of Stratford Avenue 28 feet.

Plaintiff said he was travelling 10 to 15 miles per hour, slowing down as he approached the intersection. He first looked to the west, then to the east from whence defendant would have been approaching. At this instant he was approximately 20 feet from the intersection and he could see 150 to 200 feet eastward but saw no car coming from that direction. He apparently assumed from this observation that there was no car coming from the east close enough to constitute any hazard to him, turned his attention back to the intersection and the west and proceeded. He first saw defendant's car at a point about 60 feet east of the intersection when he heard screeching as defendant's brakes were applied. Plaintiff applied his own brakes and was stopped, or virtually so, a little to the south of the center of the intersection when he was struck. The left front fender and wheel of the defendant's car hit the front post of the left front door of plaintiff's car. The crash knocked plaintiff unconscious and his automobile must have remained in gear as it traveled a total dstance of 156 feet, first going on south and westerly and then veering more to the west, crossing two front yards and a hedge before finally coming to rest. Defendant's automobile came to rest about 18 feet south of the point of impact. His skid marks extended east from that point a distance of 57 to 65 feet, and indicated that as he hit plaintiff his car was about its width (lacked 22″) south of the center line of Stratford Avenue.

There was testimony by Officer Kenneth C. Farnsworth that, if the defendant's automobile had come to a complete stop after skidding the 57 feet, his speed would have been 32 miles, or more, per hour, Any momentum left after the skid would represent additional speed. It must have exceeded the 32 miles per hour considerably because of the force with which the plaintiff's car was struck (it was damaged so badly that it could only be sold for salvage) and also because the 57 feet represented only the actual skid after the reaction time had passed and the brake was

applied. It being a residential area, the admitted speed limit is 25 miles per hour.

From the forgoing facts concerning speed, and considering the defendant's duty to keep a proper lookout, to keep his car under safe control and on his right side of the street, and the matter of yielding the right of way hereinafter discussed, it is unquestioned that the jury could have found him negligent.

We then proceed to the inquiry: Can it be said as a matter of law that the plaintiff was guilty of contributory negligence which proximately contributed to cause his own injury?

The question of contributory negligence is usually for the jury and the court should be reluctant to take consideration of this question of fact from it. *Nielson* v. *Mauchley*, 115 Utah 68, 202 P. 2d 547; *Toomer's Estate* v. *Union Pacific Railroad Co.*, 121 Utah 37, 239 P. 2d 163. The expressions in those cases are in accord with this uniformly accepted doctrine. The right to trial by jury should be safeguarded. Before the issue of contributory negligence may be taken from the jury, the defendant's burden of proving both (a) that plaintiff was guilty of contributory negligence proximately contributed to cause his own injury, must be met, and established with such certainty that reasonable minds could not find to the contrary; conversely, if there is any reasonable basis, either because of lack of evidence, or from the evidence and the fair inferences arising therefrom, taken in the light most favorable to plaintiff, upon which reasonable minds may conclude that they are not convinced by a preponderance of the evidence either (a) or (b) that such negligence proximately contributed to cause the injury, the plaintiff is entitled to have the question submitted to a jury.

The defendant makes some far-reaching contentions respecting the law of this state governing traffic at intersections. The doctrine he contends for, reduced to its bare

substance is this: That an intersection collision will not occur unless both of the drivers are negligent and fail to see each other, or having seen one another, attempt to win a race to the intersection. He maintans virtually that no matter how negligent the defendant may be it is still the plaintiff's duty to avoid the collision. He states in his brief:

"And if the defendant were travelling 50 miles per hour, that would have been fair notice to the plaintiff that the defendant had no intention of yielding the right of way."

and further:

"The rule that both drivers involved in an intersection collision are guilty of negligence as a matter of law is a healthy rule and conforms to the realities of modern day driving conditions."

These contentions of the defendant are fallacious. The law has never been so declared by this court. Concurring in the case of *Bullock* v. *Luke*, 98 Utah 501, 98 P. 2d 350, 354, Mr. Chief Justice Wolfe said:

"* * * we must be careful not to stretch contributory negligence to the point where we make it incumbent upon one not only to drive carefully himself, but to drive so carefully as always to be prepared for some sudden burst of negligence of another and be able to avoid it. * * *"

The substance of that thought has been expressed numerous times in the intersection cases relied upon by the defendant. The rule he contends for would throw a protective cloak over wrongdoers and penalize careful drivers by requiring them to anticipate and avoid the negligence of others. If a driver has to drive his car under the assumption that every one else is apt to be negligent, the next step would be for him to conclude that he better get off the streets entirely or some one is likely to hit him, and abandon the streets to those who were just willing to take chances. If, under circumstances such as present in this case, where the plaintiff's right of way is so clear that no reasonable person could have any doubt about it, he could

not assume that he would be afforded his right of way, the only way drivers could safely proceed at an intersection would be to resort to: "You first, my dear Gaston,—no, after you, my dear Alphonse," procedure or get out and hold a conference before either could safely proceed.

Such a state of uncertainty and confusion would not be consistent with the purpose of the law, which is to so regulate traffic as to permit the most efficient and expeditious use of the streets consistent with safety. It is true indeed that safety is the first and most important consideration and that careful driving is to be encouraged to the utmost possible degree. However, it does not follow that it is necessary to so interpret the law that, whereever there is a collision at an intersection, both drivers are guilty of negligence, nor that in a case such as this the plaintiff should be precluded from recovery because by hindsight it may appear that by using some extraordinary degree of caution and circumspection, he could have observed that the defendant was being negligent and thus have afforded the defendant the use of the intersection and avoided the collision.

It was the very purpose of avoiding uncertainty and confustion at intersections, and in order to make the movement of traffic both practical and safe, that rules have been established so that drivers will know which has the right of way. An excellent text statement of the rights and duties of drivers at intersections is contained in 2 Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., § 991 to 994 inc., pp. 206 et seq. The first of these rules is that the vehicle which enters the crossing first has the right of way over a second one coming from another direction, unless under the standard of due care, he should not proceed because to do so would hazard a collision. In close cases, this test is somewhat unsatisfactory because of the dfficulties, after a collision has oc-

curred, of determining who had the right of way on that basis. The text just referred to correctly states:

"* * * The mere fact of reaching the intersection first is no longer recognized as the sole test as to who has the right of way."

In order for a driver to claim the right of way on the basis of entering the intersection first, it must appear that he did not speed up just for the purpose of claiming the right of way, and also that the margin or distance by which he claimed it was so clear as to be without doubt.

The second rule is easier to apply and therefore more satisfactory, that is: When vehicles are approaching and about to enter the intersection at substantially the same time, the driver approaching from the right has the right of way over the one approaching from his left. The same text says:

"This rule has been called the basic law governing operation of vehicles at street intersections."

Necessity dictates that this rule govern unless one vehicle is enough ahead of the other in entering the intersection to assure him a *clear margin of safety*.

By both of these rules plaintiff had the right of way. He approached and entered the intersection so far ahead of defendant that no doubt could arise as to which had the right of way on that basis; even if doubt had arisen, then that is the very circumstance in which the rule of the driver approaching from the right governs. Plaintiff also had the right of way on that ground.

Defendant argues that, conceding the plaintiff's right of way and that the defendant was negligent, yet plaintiff was guilty of contributory negligence as a matter of law for not seeing and avoiding the effects of defendant's negligence. In support of his position he cites: *Bullock* v. *Luke*, supra; *Sine* v. *Salt Lake Transportation Co.*, 106 Utah 289, 147 P. 2d 875; *Hickok* v. *Skinner*, 113

Utah 1, 190 P. 2d 514; *Conklin* v. *Walsh,* 113 Utah 276, 193 P. 2d 437; and *Gren* v. *Norton,* 117 Utah 121, 213 P. 2d 356, as cases where a driver was held guilty of contributory negligence as a matter of law for failing to observe and avoid collision with another oncoming driver under circumstances where the other driver may have been, or was guilty of negligence in his approach. In order to avoid burdening this opinion with a repetition and analysis of each of these cases, one principle which distinguishes them from the case at bar can be succinctly stated: Each of them was decided upon the proposition that the circumstances were such that the driver held to be negligent as a matter of law, either observed, or in the exercise of due care should have observed, the manner in which the other driver was approaching the intersection and clearly could by ordinary reasonable care have avoided the collision. Or to state it in other words, the negligence, or manner of driving, of the other driver was such that the driver appraising the situation was alerted to it or by using due care would have been so alerted in time so that by the exercise of ordinary precaution he could have avoided the collision. And, in each of these cases, this seemed to the court so clearly manifest that reasonable minds could not find to the contrary.

There has been and still is much discussion and disagreement as to whether the various fact situations in those cases come under the foregoing rule. But there is no disagreement about the rule. If as stated by Mr. Chief Justice Wolfe in his concurring opinion, the facts of *Hickok* v. *Skinner,* supra, do not brng it within the principle above stated, it was wrongly decided, and is hereby overruled. Those cases do not purport to lay down any other standard than that of ordinary reasonable care. No matter how far afield one may go in reviewing, analyzing and rationalizing the decisions in these intersection cases, he must always come back to the one basic concept which underlies and controls the Law of Torts: the conduct of the mythical but extremely useful "ordinary reasonable prudent man under

the circumstances," all of which is encompassed in the shorter phrase "due care."

That is the standard we apply to the plaintiff. Admittedly, the right of way is not absolute. One who has it, under one or both of the aforementioned rules may not, with foolhardy assurance, claim the right of way in the face of a danger which one exercising due care would ■ see and avoid. Although plaintiff had the right of way under both rules above referred to, yet there devolved upon him the duty of due care in observing for other traffic. But in doing so he had the right to assume, and to rely and act on the assumption that others would do likewise; he was not obliged to anticipate either that other drivers would drive negligently, nor fail to accord him his right of way, until in the exercise of due care, he observed, or should have observed, something to warn him that the other driver was driving negligently or would fail to accord him his right of way. If this principle is not clear in the earlier Utah cases, it is firmly established by the more recent expressions of this court.

A case which illustrates the matter very well is that of *Hess* v. *Robinson,* 109 Utah 60, 163 P. 2d 510, where the plaintiff, driving southward along a through street, failed to see defendant's ambulance coming into the intersection from the west. It was held that even though plaintiff was negligent in not seeing the ambulance, the question as to whether his negligence proximately contributed to cause his injury was properly submitted to the jury. (Three members of the court, Mr. Chief Justice Wolfe and Mr. Justice Wade and Mr. Justice McDonough indicated that both were jury questions.) The main opinion reasoned that if he had seen the ambulance, the jury could find it to be within his duty of due care to assume that it would obey the stop sign, and that he was entitled to proceed through the intersection until it became apparent to him that he ambulance would no stop.

In the later case of *Lowder* v. *Holley*, 120 Utah 231, 233 P. 2d 350, the plaintiff failed to observe the defendant's vehicle approachng from the right. There was evidence from which it could be found that at the time the plaintiff was about ready to enter the intersection the defendant was 250 feet away. It was held that the question whether plaintiff's failure to see defendant's approach was negligence was a question of fact. It was also observed that had he seen defendant it could be found to be within his duty of due care to assume that the defendant would yield him the right of way.

The governing principles in the very recent case of *Poulsen* v. *Mannes*, 121 Utah 269, 241 P. 2d 152, are identical to the instant case. The plaintiff stopped at the intersection, looked to the east where he could see about 400 feet, assumed there was no traffic constituting a hazard from that direction, looked back to the west and proceeded on into the intersection where he was struck. The question of whether his failure to look again to the east constituted negligence and also whether such negligence proximately contributed to cause the collision were held to have been properly submitted to the jury. For other Utah cases in accord with the holdings of the cases discussed above see *Hardman* v. *Thurman*, 121 Utah 143, 239 P. 2d 215; *Nielson* v. *Mauchley*, supra.

We revert briefly to plaintiff's evidence. As he was about 20 feet north of the intersection, he looked east, then back to the west and didn't see defendant until the latter set his brakes just before the impact. This testimony should be interpreted in the light of well known facts  ■ concerning a person's abiliy to see. The analysis of this case in the briefs proceeds upon a fallacy which is common in the trial and determination of facts in lawsuits of this type: That is, it seems to be assumed that human vision projects as through a tunnel to the point of main focus, seeing practically nothing else. Ignored is the fact that the sight is diffused, that is, the normal field, or angle

of vision (the width of area one can see to either side of his direct line of vision) is quite wide, in fact about 180°. This is quickly and easily demonstrated by placing one's finger back of his line of vision, say back of his ear, a few inches out from the head and bringing it gradually forward. The eye will perceive it about as it gets up even with the eye. With this breadth of vision, although plaintiff withdrew his attention from the east back toward the intersection and to the south and west, it seems likely that he would have been aware, out of the "corner of his eye" so to speak, of the approach of the Stevens' car. However, the jury could believe that he did not see it at all until it was 57 feet from the impact, or it may have assumed that what he meant by saying he didn't see it until that time was that his attention and direct vision were then first focused upon defendant. Whichever view is taken, under the law as we view it, a jury question as to due care on plaintiff's part was presented.

We must remember that there were three other streets to give some attention to as he approached the intersection. All of the attention could not very well or safely be focused on any one at any given instant. Remaining aware of the others and giving them secondary attention, the plantiff would look to the west, as he said he did, to observe for the favored traffic to which he must give right of way, if any was near. He then looked to the east and saw no car within the extent of his vision, 150 to 200 feet. At that instant he was entitled to assume, absent anything to warn him to the contrary, that any car approaching from that direction would do so at a lawful rate of speed, that is, not to exceed about 25 miles per hour. He then changed his main attention back to the intersection and the south and west and proceeded.

From that point, 20 feet north of the intersection, where plaintiff made his observation to the east, he would have to travel about 50 to 55 feet to get past the center of the intersection and thus be clear of any westbound traffic.

At 15 miles per hour, or 22 feet per second, this would take him slightly less than 3 seconds. Assuming that any westbound traffic would be traveling within the speed limit of 25 miles per hour, or 36 feet per second, the plaintiff would have had time to pass clear of any car at a greater distance than 108 feet to the east. (3 Sec. x. 36'.) The evidence is that defendant was at least 150 feet away and the jury could find more than 200 feet.

As hereinabove suggested, we must avoid measuring the plaintiff's duty and charging him with negligence because he may have failed to anticipate and avert negligence on the part of the defendant. We do not believe that it can be said that all reasonable minds must agree that the plaintiff's action in looking to the east and then proceeding, relying on his right of way over traffic from that direction, and the assumption that any such traffic would not exceed a reasonable and lawful rate of speed, amounted to negligence on his part.

There is also the question of proximate cause. Should we assume that all reasonable men must conclude that plaintiff's failure to keep more of a lookout to the east amounted to negligence, would they also all agree that such falure to observe proximately caused the collision? Suppose he had looked continuously to the east as he approached and proceeded into the intersection and had seen defendant coming. Could he not, within the limits of reasonable care, have assumed defendant would slow up and yield the right of way, or would the defendant's speed and proximity to the intersection have been a warning to the plaintiff that he would not do so? Under the rulings in *Hess* v. *Robinson; Lowder* v. *Holley;* and *Poulsen* v. *Mannes,* all cited above, this was also a jury question.

Cause is reversed and remanded. Costs to appellant.

WADE, McDONOUGH and HENRIOD, JJ., concur.

WOLFE, Chief Justice (concurring in the result).

I concur in the result and in that part of the reasoning supporting the result which I set out as follows: that the plaintiff had the right of way; that at least for the purposes of determining the defendant's right to dismissal the defendant must be treated as having been negligent in traversing the approach to the intersection at an execessive speed; that it was clearly a jury question whether under all the circumstances the plaintiff was guilty of contributory negligence; and that there is evidence from which a jury could find that he was not so guilty. This much supports the decision for reversal and I rest my concurrence on it. By this, I do not wish it to be implied that I do not agree with the statement made by Mr. Justice Crockett in the rationale by which he reaches the result. The opinion shows evidence of a commendable attempt to find common principles governing our intersection decisions. In many and perhaps most of those statements I can agree. In others, I cannot. But I think it a work of supererogation for me to discuss each one separately and cast myself in the role of a critic as to them. I am inclined to the view that the writer of the opinion in his attempt to bring all the intersection cases under common principles was on solid ground so long as he did not go beyond the broad principle that each driver must exercise due care under all the circumstances surrounding his traversal of the intersection; as to more refined principles, intersection cases will vary with the circumstances. I cannot agree that *Hickok* v. *Skinner,* 113 Utah 1, 190 P. 2d 514, may be justified on the theory that the driver who had the right of way in that case was negligent as a matter of law because *he*

*"observed, or in the exercise of due care should have observed,* the manner in which the other driver was approaching the intersection and clearly could by ordinary reasonable care have avoided the collision." (Emphasis added.)

This statement begs the question. The very thing complained about in that case is that the driver who unquestion-

ably had the right of way, was held to be negligent in failing to reappraise the situation. He was not given the benefit of the preference the law accorded him nor of the presumption which the law should indulge him, viz. that the non-preferred driver would also slow down in deference to his right. It appears to me that those elements should have gone to the jury to determine if under all the circumstances the driver who was in law held guilty of contributory negligence, was in fact so guilty.

I do not think in the *Hickok* case it could be said as a matter of law that under the circumstances Hickok was negligent in proceeding under *his* right of way and that he should have been or was alerted to the fact that the other party would not surrender it to him.

In that case the facts are not such as to justify the statement that

"the negligence, or manner of driving, of the other driver was such that the driver appraising the situation was alerted to it, or by using due care would have been so alerted in time so that by the exercise of ordinary precaution he could have avoided the collision."

Whether that was so should have been left to the jury. For the lower court or this court to take upon itself the function of saying that the favored driver was negligent unless no reasonable mind could say otherwise, simply reintroduces the element of requiring the preferred driver to drive so as to avoid the negligence of the disfavored driver which both Mr. Justice Crockett and I have given warnings against. Or it introduces a pseudo last clear chance doctrine. .

I appreciate the brace effort of Mr. Justice Crockett in trying to explain the *Hickok* case and in attempting to bring it under a common category but it requires a perversion of the facts to do so. That case should have gone to the jury. As long as it holds the sway of authority, counsel for this defendant and other defendants may justifiably contend

for what Mr. Justice Crockett states is counsel's contention herein, to wit, that virtually no matter how negligent the defendant may be it is still the plaintiff's duty to avoid the collision, a length to which, however, I do not think the attorney for defendant really goes. Of course, I do not agree with the contention of the defendant in this case that

"if the defendant were traveling 50 miles per hour, that would have been fair notice to the plaintiff that the defendant had no intention of yielding the right of way."

Certainly if the plaintiff did have that "fair notice" and had time to stop and did not, the jury could under proper instructions, have found the plaintiff guilty of contributory negligence. But the jury would have also had before it the fact that when he timely looked east he did not see any car coming west (toward him) within a distance of 150 to 200 feet; that he saw defendant's car for the first time when it was 60 feet from him and he was then alerted by the screech of its brakes; and the jury would determine whether this was "fair notice" under those circumstances. The fact seems to be that the defendant counted himself one of those lucky chaps who could speed into intersections and meet no cars. There are minds which appear to operate that way.

Perhaps in the *Hickok* case, a reappraisement of the situation if it had been made at *the right* moment would have alerted the favored driver to the fact that the disfavored driver was *not* going to yield the right of way and perhaps given him time to avoid the collision. I say "at the right moment" because a moment sooner than that "right moment" the driver of the favored car might still have thought the other driver would slow down to let him pass whilst a moment later than that "right moment" it would have been too late to avoid the collision. This points up, I think, the duty we put upon the favored driver in those cases. The disfavored driver has the duty to slow down; and while the favored driver cannot totally ignore

the other and blindly traverse the intersection, he can, until he is otherwise put on notice, presume that the disfavored driver will slow down and permit him to pass, but it is for the jury to determine whether under all the circumstances the favored driver could indulge in the presumption that the disfavored driver would yield him the right of way and under the circumstances, the weight it should give that presumption, if any. It is just these factors which make it a jury question. In the case of *Farrell* v. *Cameron*, 98 Utah 68, 94 P. 2d 1068, this court held that a driver who notes that a car approaching from the opposite direction 100 feet away is 12 to 16 inches over the center line of the highway is negligent as a matter of law if he fails to then turn his car to the right to an extent which will allow the cars to pass if the oncoming car remains over the center line, provided that there is sufficient space to the right in which to turn and time for the driver to do so. In a dissenting opinion I contended that the duty of the driver to move to the right ordinarily would not arise immediately upon seeing the approaching car on the wrong side of the highway, but that the duty to move to the right arose only when the driver had notice or reasonably should have taken notice that the approaching car did not intend to timely retreat to its own side of the highway. Until such time, however, I argued that the driver could assume that the approaching car would observe the law of the road and seasonably move to its proper side of the highway so as to pass without interference. In that case we did not have the benefit of a transcript of the testimony adduced at the trial but had before us only the findings of the trial court. I thought that there was nothing in the findings of fact which would warrant us in concluding as a matter of law that when the approaching car was 100 feet away, the time had arrived when the driver of the other car knew or should have reasonably known that the oncoming car did not intend to move over to its own side of the highway.

Somewhat the same principle applies in many of the intersection cases and, as Mr. Justice Crockett suggests, especially in those intersection cases where both drivers are visible to each other throughout their approach and traverse of the intersections. I think my only difference with him is that in the *Hickok* case the question of whether the circumstances were such that the favored driver should or could have noticed that the other (disfavored) driver was not going to yield his right of way was for the jury. It was not a case for a pronouncement by this court of negligence in law on the part of the favored driver. No attempt should be made at this time to distinguish the *Hickok* case. It should be expressly overruled or left to die of inanition.

As to *Lowder* v. *Holley,* 120 Utah 231, 233 P. 2d 350, I stated in my concurrence the ground on which I placed it. Likewise in *Poulsen* v. *Mannes,* 121 Utah 269, 241 P. 2d 152, I did the same thing. I must refer the reader to those two cases for the factors which I thought distinguished them from *Hickok* v. *Skinner,* supra, and *Conklin* v. *Walsh,* 113 Utah 276, 193 P. 2d 437. Those concurrences included other general observations which I made in this segment of the law which I think are in general accordance with Mr. Justice Crockett's opinion in this case. However, I shall not guarantee that, but there is no necessity or aid in going into those concurrences. They speak for themselves.

For the above reasons I can concur only in the results.