## SPACKMAN v. CARSON.

No. 7318.   Decided April 5, 1950.   (216 P. 2d 640.)

See 60 C. J. S., Motor Vehicles, sec. 284. Duty of driver of automobile moving in same direction, see note, 124 A. L. R. 485. See also, 5 Am. Jur. 565.

*Bullen & Bell,* Logan, *Thatcher & Young,* Ogden, for appellant.

*L. E. Nelson,* Logan, *George C. Heinrich,* Logan, for respondent.

WOLFE, Justice.

The respondent, plaintiff below, commenced this action to recover damages allegedly incurred when the motorcycle he was operating collided with a truck being driven by the appellant, defendant below. The defendant denied any negligence on his part and alleged that the proximate cause of the plaintiff's damages was the latter's own negligence in failing to keep a proper lookout. The sole assignment of error is that the court below erred in denying the defendant's motion for a directed verdict which was made on the ground that there was no evidence that the defendant was negligent and that the evidence showed without dispute that the plaintiff was negligent as a matter of law.

The collision occurred on October 25, 1947, at about 3:45 p. m. on U. S. Highway 91, in front of the defendant's home which is about one and two-tenths miles south of Richmond, Cache County, Utah. The highway at that point is straight and level and runs in a general north and

south direction. The concrete pavement is eighteen feet wide with a yellow center line, and there is a six foot dirt shoulder on each side of the pavement. The defendant's one and a half ton truck and his automobile were both parked facing north in front of the defendant's home and between four and nine feet east of the pavement on the shoulder of the highway. The truck was parked directly behind the automobile.

The plaintiff testified that he was traveling north at about forty-five miles per hour in the middle of the east lane; that he observed the defendant's truck standing motionless when he was about 200 feet south of the truck; that he next observed the truck when he was about thirty feet away from it at which time the defendant had driven the truck out into the east lane of the pavement; that the truck was traveling north at about ten m. p. h. and on an angle of about forty-five degrees with the highway. The plaintiff further testified that as soon as he saw the truck moving onto the highway in front of him he applied his brakes and turned the motorcycle to the left in an effort to avoid a collision; that at the time of the impact the front end of the truck had reached a point about on the center line of the pavement; that the motorcycle collided with the truck at the rear end of the left front fender and in front of the left door of the cab; and that he and his motorcycle both hurled over the hood of the truck and landed fifteen to twenty feet away. The defendant immediately turned his truck off into the east barrow pit and stopped about six or eight feet north of where the plaintiff was lying.

The defendant's version of the accident differs in a few details. He testified that he came out of his house and got into his truck which he had parked behind his automobile in front of his house; that before he got into the truck he looked down the highway to the south; that his vision was unobstructed for one-half mile and no vehicles were in sight; that he started the engine, backed up twelve to

fifteen feet to get space to clear the automobile; that he applied his brakes when he finished backing which illuminated the red stop light on the rear of the truck; that he looked in the rear view mirror and saw no vehicles in view; that he shifted into first gear, made a signal with his arm, and then drove slowly northward almost parallel with the highway but gradually angling out to the left into the east lane of pavement; that he then shifted into second gear; that when the left front wheel of the truck was still about two feet from the center line and when both right wheels were still off the pavement, he saw a red flash in the rear view mirror, followed by a red flash beside him; that there was a crash and the noise of a motorcycle engine roaring; and that he turned his truck off the pavement into the barrow pit on the east side of the highway where he stopped. He admitted that he did not see either the motorcycle nor the defendant before the impact.

The defendant contends, in support of his sole assignment of error that the court below erred in refusing to direct a verdict for him, that the plaintiff's own testimony establishes without dispute that the plaintiff failed to keep a proper lookout ahead of him and that this failure was the proximate cause of the accident. The defendant points out that the plaintiff testified that he first observed the defendant's truck when he was about 200 feet south of it, but that he did not observe it again until he was about thirty feet away, at which time it was too late to avoid a collision. Thus, the defendant asserts, the plaintiff was not watching when the truck backed up, when the stop-light was illuminated, nor when the defendant signaled.

Admittedly, this is a close case. It must stand strictly on its own facts. The closeness comes in whether we can say as a matter of law that the driver of a motor vehicle traveling at the speed of forty-five m. p. h. who notes another motor vehicle standing off the paved portion of the highway in front of a dwelling two hundred

feet away, is negligent in not making a reappraisement of his relationship with the parked vehicle before traveling 170 feet nearer to it. Note that this is not the case of a vehicle parked off the pavement under such circumstances as would give warning that the driver had moved off the pavement onto the shoulder of the road only momentarily and might at any moment move back onto it as frequently happens with the *traveling* public. If the plaintiff drove at the speed of forty-five miles per hour, as he testified, he traversed sixty-six feet in one second. Thus he traveled the 170 feet between the first and second time that he observed the truck in less than three seconds. Had the plaintiff when he observed the truck standing on the shoulder of the highway, known or had reason to believe that the truck was about ready to enter upon the pavement, there might be merit in the defendant's assignment of error. But according to the plaintiff's testimony, when he first observed the truck it was standing motionless in front of a dwelling and there was no indication whatever that it was about to be moved onto the pavement. The plaintiff was not alerted to any immediate danger. Under these circumstances we are convinced that the issue of whether the plaintiff was negligent in failing to keep a more diligent lookout ahead was properly submitted to the jury.

We are well aware of the legal duty of the driver of a vehicle to keep a lookout ahead and aware of the relationship that exists between speed and alertness—the greater the speed, the more constant the necessity for alertness and observation. But keeping a lookout ahead does not mean that the gaze must be glued incessantly on every object ahead. Such intenseness, aside from the strain, might actually detract from the necessity of overall observation. The content of the duty to drive with reasonable care varies with the condition and circumstances. If one is driving among moving vehicles where the situations are rapidly changing, the content of the duty to regulate speed and keep alert to the changing movements

of other vehicles in relation to one's own, increases with the density of the traffic and the rapidity of the change of the situations. Unless all reasonable minds *must* say that a party did not use due care under a particular set of circumstances, it is a question for the jury. While the plaintiff was going at a fairly high rate of speed, the vehicles toward which he was approaching were both stationary, at least upon his sizing up the situation at a distance 200 feet away. Furthermore—and this is an important element —the vehicles may have given the impression that they would remain stationary, at least for a few seconds, because there appeared to be nothing that would alert the mind as to the possibility of an immediate change from inaction to action. Plaintiff's testimony is that he did not notice a driver in the seat when he first looked 200 feet away.

It must be kept in mind that where a party moves from a stationary position, he is somewhat in the same category as a person changing his direction in a line of traffic. That is, a person making a turn out of one line across another line of traffic is the one who first knows that he intends to change his direction from that in which it would otherwise be presumed that he intended to continue. Any person traveling in the line of traffic which the direction changer intends to cross can only be apprised of the latter's intention to change direction on signal or upon seeing him start to make the change. It is not as if there were a telephonic system between the brain of the direction changer and those who are to be affected. Therefore, the man who makes the change of direction owes the duty of looking before he makes it and of signaling clearly and timely and of making the change sufficiently slowly so as to give time for other drivers who may be affected by it to be alerted and to react to that signal.

When a person moves onto a highway from a stationary position, he owes the same duty. In this case, the defendant

was the one who had initial control of the situation. If he backed before he started across the highway, it might have been when the plaintiff was a considerably greater distance away than 200 feet and had not yet noted that movement. At least the plaintiff testified that when he was 200 feet away, he noted no movement of the truck, the defendant's truck appearing to be stationary. This case has some of the aspects, as far as the plaintiff is concerned, of a sudden turning out in front of him. Probably the most that could be said is that had the plaintiff made a reappraisal of the situation during the 2½ second period, he might have been able to avoid the defendant's negligence by swerving abruptly to the left. But this has the aspect of requiring one to avoid the negligence of the other when no last clear chance doctrine is involved. It was for the jury to determine whether the plaintiff was negligent under the circumstances of this case in carrying with him for a period of less than three seconds and up to a point in which it may have been too late for him to avoid collision, the impression that he had gained by his last previous appraisal of the total situation, viz., that the parked truck was stationary and parked under such conditions as would permit a reasonable man to assume that it would not be started up and be driven onto the pavement before he could pass it at the speed which he was going. It can be seen from the above that any slight change in the situation might change the question from one for the jury to one for the court as a matter of law. But in view of the situation presented by the evidence, it was a question for the jury and not one for the court.

The defendant refers us to *Conklin* v. *Walsh,* 113 Utah 276, 193 P. 2d 437, in support of his contention. There the defendant's vehicle was being driven east on an arterial highway, sixty feet wide, at a speed between thirty and forty-five miles per hour. When the driver was about 165 feet from an approaching intersection, he observed on his left or on the north the plaintiff's vehicle approaching the

stop sign on the cross street. He assumed that that vehicle would be brought to a stop and yield the right of way to him, and thereafter he completely ignored the movement of the plaintiff's vehicle until it was too late to avoid colliding with it. We held that the defendant's driver was negligent as a matter of law in failing to look to his left again and ascertaining the whereabouts of the plaintiff's vehicle. We stressed the fact that the plaintiff's vehicle had moved at a speed of only ten to fifteen miles per hour from a point somewhere between eighteen to thirty-two feet north of the curb line of the arterial highway to the point of impact which was nearly three-fourths of the distance across the sixty-foot arterial highway. Had the defendant's driver looked to his left at any time after the plaintiff's driver passed the stop sign, he would have seen that the latter had no apparent intention of yielding the right of way. Clearly that case has no application here because there, unlike the instant case, the vehicle which moved onto the arterial highway was about to enter the arterial highway when first observed by the driver of the vehicle on the arterial highway and hence the latter was alerted to the possibility that the right of way might not be yielded to him.

The defendant's contention that there is no evidence from which the jury could find that he was negligent in the operation of his truck must also fail. If the plaintiff's testimony was believed by the jury, they could have found and evidently did find that the defendant moved his truck onto the pavement before such movement could be made with reasonable safety in violation of 57-7-132, Utah Code Annotated 1943, which provides:

"No person shall start a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety."

The defendant admitted that he did not turn his head and look down the highway immediately before he entered

into the pavement, but that he looked into the rear-view mirror only. As we stated in *Mingus* v. *Olsson,* 114 Utah 505, 201 P. 2d 495, the duty to look carries with it the duty to see what is there to be seen. ■

The defendant's motion for a directed verdict was properly refused and hence the judgment below is affirmed. Costs to the respondent.

PRATT, C. J., and WADE and McDONOUGH, JJ., concur.

LATIMER, Justice.

I dissent.

This case presents slightly different principles than are involved in intersection collisions and I have doubts that the doctrine of re-appraisement as announced in those cases is applicable in this instance. The doctrine would appear to be more appropriate when a driver is required to focus his attention on traffic moving along intersecting highways and where it is reasonably necessary for a driver to observe in different directions. In my opinion this accident occurred because both parties failed to maintain a proper look-out. The defendant's negligence consisted of moving from the shoulder of the highway on to the main travelled portion without looking to the south to see whether the movement could be made in safety. The plaintiff's negligence consisted of failing to keep any look-out straight ahead to determine whether the road was free and clear of traffic moving to the north.

According to the plaintiff's version of the accident, he was travelling north on U. S. Highway 91; there was no intersection to confuse him; no traffic immediately ahead of him to distract his attention; no traffic approaching within a reasonable distance from the opposite direction and no possibility of vehicles advancing along crossroads. The highway was straight and wide. The weather was

clear and visibility was good. From these facts it is apparent that there was no incident or event to draw his sight from his course; no reason for his attention being divided and no reason for his not keeping a proper look-out ahead. Had he been reasonably observant of movements immediately ahead of him he could not have missed seeing the truck move from its parked position on the shoulder to the place where the collision occurred. Moreover, I can find no reasonable explanation of why plaintiff did not pass to the west side of the highway and go around the vehicle. He makes no contention that traffic prohibited this, neither does he claim that he made any particular effort to swing to the left side of the highway to permit him to pass in safety. The truck did not block that portion of the highway and such a movement could have been made in safety had the plaintiff observed the truck moving on to the paved portion of the highway. The maneuverability of a motorcycle is greater than that of an automobile and ordinary care in this case would have permitted the plaintiff to have gone on around the truck even though the time element might have been short.

I realize that this was a fast moving situation because of plaintiff's speed, that time did not permit a studied course of action and that sometimes a parked car is driven on to the main travelled portion of the roadway with such suddenness that the party proceeding lawfully down the highway can not stop or turn out in time to avoid a collision. Plaintiff in this case does not contend that he observed the movement and that it was so sudden he was unable to stop. He contends that because the truck appeared to be parked he can be excused for not observing it while he was travelling a distance estimated by him to be approximately one hundred seventy feet and until it was too late to avoid a collision. Regardless of the accuracy of plaintiff's estimate of distance the truck was driven at a slow rate of speed from a parked position on the shoulder to a point almost in the center of the highway without being observed by plaintiff

and the direction of travel was almost parallel with the oiled portion of the road.

To illustrate my point, Mr. Justice Wolfe in his opinion gives the plaintiff a quarter of a block to appraise and re-appraise the situation. Without any interference by other traffic and without any reason to justify his failure to see I pose the following question to test plaintiff's due care: Where was he looking during the time the truck moved from its stationary position until it was out on the highway? He had only one direction in which he need be looking, that is, straight ahead; and if he were maintaining any look-out in that direction he could not have missed seeing the truck moving onto the highway in time to have avoided the collision.

For the foregoing reason I conclude that the plaintiff was guilty of negligence as a matter of law and that the trial court should have directed a verdict.