## POULSEN v. MANNESS et al.

No. 7663.   Decided February 28, 1952.   (241 P. 2d 152.)

See 61 C. J. S., Motor Vehicles, sec. 526. Automobile accidents at intersections. 5 Am. Jur., Automobiles, sec. 287 et seq.; 172 A. L. R. 1141.

*Ray, Quinney & Nebeker, Grant C. Aadnesen* and *Robert A. Burns,* all of Salt Lake City, for appellants.

*Eldon A. Eliason,* Delta, *Preston D. Richards,* Salt Lake City, for respondent.

WADE, Justice.

This suit was brought by Archie Poulsen to recover for damages to his car and for personal injuries sustained in an intersection collision between a green, brown-topped jeep he was driving and a car owned by C. V. Manness and

being driven by Udel Wood, the other appellant herein, his agent. This appeal is from a judgment on a jury verdict in favor of Poulsen.

The appellants contend there was insufficient evidence of negligence on their part to justify the submission of the case to the jury and that Poulsen was guilty of contributory negligence as a matter of law.

Viewing the record in the light most favorable to respondent, as we must, the jury having found in his favor, the evidence discloses that on August 4, 1949, at about 11:00 a. m., respondent, accompanied by his wife and small son in his jeep automobile, left Delta, Utah, to return to his home in Sugarville. He was driving north on the Sugarville-Hinckley road when he reached its intersection with the Topaz road about 11:30 a. m. The Sugarville-Hinckley road is a 24-foot graveled road running in a general northerly and southerly direction, and the Topaz road is a 20-foot oiled road with 2 or 2½ foot graveled shoulders on each side running in a general easterly and westerly direction. Both these roads on the day of the accident were heavily lined with tall sunflowers and weeds for miles before the intersection at which the accident occurred. There were no stop signs at this intersection. When Poulsen reached the intersection he stopped his jeep about three feet from the oiled portion of the Topaz road and first looked to the east, the direction from which Wood was coming. He testified he could see east on the road from where he was sitting for a distance of about 400 feet and saw no traffic coming from that direction. He then looked west but could not see very far in that direction because his vision was obscured by some sunflowers growing further out into the road around a ditch on that side so he put his jeep in low gear and proceeded to cross the intersection at about five to ten miles an hour; as soon as he could see that the road was free from traffic coming from the west he looked east again, by which time he had traveled about 10 feet or almost halfway across the intersection, and then for the

first time saw a car about 40 or 50 feet away speeding towards him at about 70 miles an hour. Before respondent had time to get his jeep out of the way, this car ran into the middle of the right side of the jeep catapulting respondent, his wife and child into a ditch on the south side of the Topaz road, and knocking the jeep 40 to 45 feet west up that road. Appellant's car came to a stop about 30 feet west of the point of impact.

Udell Wood, the driver of the car, testified that on the morning of the accident he, with a companion, was going to Abraham which is located on the Topaz highway about one and a half miles west of the place where the accident occurred; that he had been driving about 10 miles per hour because of the roughness of the road until he reached a point about 1500 feet from the intersection where the accident happened where the road was oiled and he accelerated his speed until it reached 50 miles per hour. He had looked at his speedometer and had noted that this was his speed, when he glanced up and first saw respondent's jeep in the intersection about 40 or 50 feet ahead of him. He immediately put on his brakes but was unable to stop in time to avoid hitting the jeep. He also testified that although he had traveled that road once before he did not know there was an intersection where the accident occurred because of the sunflowers and weeds lining the road on both sides and that before the accident he had not looked to the north or south but was looking straight ahead.

Part of Wood's job was to sell roofing and to accomplish this he would drive around looking for houses which needed roofing and then contact the owners. Respondent's wife testified that while she was lying in the ditch and Wood came up to help her, he said:

"* * * if I had only been watching the road instead of looking for houses and not driving so fast this never would have happened."

Wood denied making such a statement and another statement attributed to him by one of respondent's witnesses that he was driving 70 miles an hour.

From this evidence the jury could reasonably find that defendant's car was traveling unreasonably fast for the existing conditions, that plaintiff, although there was no stop sign, stopped and looked to the east at a point where he could see 400 feet on the highway from the direction which defendant's car was coming and that at the time defendant's car was not within his vision, that plaintiff then looked to the west and as soon as he could move his jeep forward enough to see that the highway was free from traffic in that direction he looked to the east again at which time defendant's car was bearing down on him so near that he was unable to avoid the accident. Such facts present a jury question both on defendant's negligence and plaintiff's contributory negligence and we cannot disturb their finding.

The facts in this case are very similar to those in the case of *Lowder* v. *Holley*, 120 Utah 231, 233 P. 2d 350, recently decided by this court. In that case, as in the instant case, there was evidence that the plaintiff had stopped and looked in both directions before proceeding into the intersection and that the driver of the other car was going at a high rate of speed and did not see the plaintiff's car which was already in the intersection until almost upon it. In the *Lowder* v. *Holley* case, as in the instant case, there was evidence of visual obstructions at the intersection which the factfinder had to consider. We there held that the questions of negligence or contributory negligence were questions of fact to be determined by the fact-finder. That case is controlling here and the court did not err in submitting these questions to the jury.

Affirmed. Costs to respondent.

McDONOUGH and CROCKETT, JJ., concur.

WOLFE, Chief Justice (concurring specially).

I concur. Appellants contend that plaintiff should be held to have been negligent in law and the jury so instruct-

ed; that Topaz road being oil was built for lawful maximum speeds; that the Sugarville-Hinckley road was graveled and a minor and subordinate highway in comparison; that plaintiff stopped with his wheels three feet from the oiled portion of Topaz highway looking first east, where he could see objects 400 feet in that direction, then west where his view was very limited requiring him to proceed further toward the paved edge of Topaz highway to make another appraisement west; that while he made the appraisement west he failed to look again east until he was almost halfway across the paved portion of Topaz highway and directly in the path of the defendant's oncoming car which was then 40 to 50 feet away to the east.

In *Spackman* v. *Carson*, 117 Utah 390, 216 P. 2d 640, we said that it could not be held as a matter of law that the plaintiff motor cyclist was negligent because an interval of nearly 3 seconds elapsed in which he proceeded at the speed he was going (about 170 feet) before he reappraised the situation. In cases concerning traffic where the situation is in flux and deductions depend on the bases assumed, which may be a choice among permutations and combinations of factors, the trial court, unless only one combination of factors under any reasonable view of the evidence is permissible, should not find negligence as a matter of law.

In this case the front wheels of the plaintiff's jeep were stopped at the south edge of the oiled portion of Topaz road when his observations were first made. Because of the close proximity of the sunflowers to the paved road, the jury may have determined that plaintiff proceeded as far forward as was reasonably prudent in order to make his observation of traffic on the Topaz road. After what was found to be an inadequate observation to the west because of vision interference, he shifted his gears to low and the car started from a stand still position and accelerated perhaps up to 10 miles an hour to reach the middle of the oiled portion of Topaz road where the second observation east was made. How many seconds that view to the west, the

shift in gears, starting and traversing took would be an estimate and remain problematical. Whether plaintiff proceeded precipitately or cautiously is a jury question. Too late, it appears, he again looked east.

But it may hardly be urged that the court looking back over the actions of the plaintiff just preceding the collision, could have said that he failed to act as a prudent man under the circumstances because he became aware of the oncoming car too late when the speed of that car might have been such as not to give a prudent man enough time to complete his appraisement to the west and then again to the east before he realized that the 400-foot stretch previously unoccupied was now fraught with danger.

In this type of case the speed may not only prevent a timely stop but lessen the interval which the other party has to reappraise a situation hitherto seemingly safe and in that way has a dual effect in causing a collision.

I have preferred to set out my views in detail and to make a refined analysis of this case rather than to endeavor to place it under a category headed by a previous case supposed to be similar in facts. What differentiates cases may be dissimilar but minor important facts. Such facts even though seemingly minor may give rise to significant differences. True, if cases can be pigeonholed according to their facts it may afford some guide to the applicable law. Here we have a case of a secondary rural road intersecting with a speed inviting highway. It appears that the road maintenance authorities permitted weeds to obscure the approaches to the intersection so as to prevent easy discernment of that intersection by travelers on the Topaz highway and which impaired the opportunity of travelers on the Sugarville-Hinckley road properly to appraise the situation on the Topaz road.

The city intersection collision is usually under circumstances quite different from those of this case. This case is unlike *Bullock* v. *Luke*, 98 Utah 501, 98 P. 2d 350; *Hickok*

v. *Skinner,* 113 Utah 1, 190 P. 2d 514; *Conklin* v. *Walsh,* 113 Utah 276, 193 P. 2d 437; *Gren* v. *Norton,* 117 Utah 121, 213 P. 2d 356. It is different from *Mingus* v. *Olsson,* 114 Utah 505, 201 P. 2d 495, although there may be some broad principles of law stated in those cases applicable to intersection or for that matter any automobile collision case. It is the factual differences which arise out of human conduct that give birth to refinements in cases which differetiate them.

This case differs materially from *Hess* v. *Robinson,* 109 Utah 60, 163 P. 2d 510. True, it is assimilable to *Lowder* v. *Holley,* 120 Utah 231, 233 P. 2d 350, 353, except in that case two county roads intersected; not a country road with a speed inviting highway. This situation may come up more often in the future as cars emerge from country lanes or secondary roads onto through and cross continental highways where great disparity of speed may be the usual thing which on the roads intersecting in the case of *Lowder* v. *Holley,* supra, was not expectable. When that case was before this court, it was argued and treated as an *intersection* collision. The two graveled roads on the outskirts of Mapleton, Utah, a small rural community, were considered by this court to constitute what could be classified as an intersection; akin to an intersection of two city streets. There was no stop sign; the plaintiff slowed down to 5 or 10 miles per hour and then proceeded across. The evidence was sufficient to sustain a finding that the defendant was traveling at 50 miles per hour. I stated in my concurring opinion that because of this great disparity in speed, we could not hold the plaintiff guilty of contributory negligence as a matter of law. The plaintiff need only appraise the situation with regard to what the lawful rate of speed is upon the intersecting road. The instant case falls within a category which should be denominated a *highway* case. Here maximum lawful speed is permitted on the oiled highway and it appears undisputed that there was a duty upon the plaintiff to stop before attempting to cross the highway.

In this situation we must expect the reasonably prudent person to look greater distances in order to ascertain that he can cross with safety. The speed of oncoming traffic being greater, the time for appraisement and decision must necessarily be shorter. This, of course, every motorist realizes.

Another way of stating it is that a motorist driving on a fast arterial highway need not treat every country lane, or relatively minor side road, as an *intersection*. He has the right of way for a much greater distance.

This difference in the physical nature of the two roads upon which the respective defendants were traveling distinguishes this case from that of *Lowder* v. *Holley*. For this reason, I think we cannot say in the highway class of cases, as did the court in *Lowder* v. *Holley*, supra, that the plaintiff's failure to see the oncoming vehicle "could in no way have contributed to the accident." I believe that what was meant by that statement was that the plaintiff was not in law negligent in looking only as far as he did.

HENRIOD, J., concurs in the result.