# COX v. THOMPSON.

No. 7796.  Decided March 23, 1953.  (254 P. 2d 1047.)

See 61 C. J. S., Motor Vehicles, sec. 470. Contributory negligence of pedestrian crossing outside of crosswalk. 5 Am. Jur., Automobiles, sec. 454; 67 A. L. R. 320.

*Brant H. Wall* and *Jay Elmer Banks,* Salt Lake City, for appellant.

*Stewart, Cannon & Hanson* and *Edward M. Garnett,* Salt Lake City, for respondent.

WOLFE, Chief Justice.

About 1:30 a. m. January 21, 1951, Jackson Blaine Cox while crossing U. S. Highway 91 in Orem, Utah was struck and fatally injured by an automobile driven by Cyril P. Thompson, defendant. Plaintiff, Norma D. Cox, his widow, as administratrix of his estate, brought this action against defendant Thompson to recover damages for the wrongful death of her husband. The trial court directed a verdict for defendant on the grounds that decedent was contributorily negligent as a matter of law, and as a matter of law, his negligence proximately contributed to his death. Plaintiff appeals.

The grounds for her appeal are three in number. (1) The trial court erred in finding decedent contributorily negligent as a matter of law because (a) decedent is presumed to have been acting with due care and such presumption was not overcome and (b) decedent's contributory negligence was a question of fact improperly withheld from the jury. (2) Assuming decedent was negligent, the question of whether his negligence proximately contributed to his death was a question of fact erroneously withheld from the jury. (3) The trial court erred in failing to submit the case to the jury on the theory of last clear chance.

If the presumption that a person in a place of danger exercises due care for his own safety applies in this case, it will be extinguished if the evidence properly sustains the finding that decedent was contributorily negligent as a matter of law. See *Tuttle* v. *Pacific Intermountain Express*, 121 Utah 420, 242 P. 2d 764; *Compton* v. *Ogden Union Ry. & Depot Co.*, 120 Utah 453, 235 P. 2d 515; *Mingus* v. *Olsson*, 114 Utah 505, 202 P. 2d 495; *Clark* v. *Los Angeles & Salt Lake R. Co.*, 73 Utah 486, 275 P. 582; *Ryan* v. *Union Pac. R. Co.*, 46 Utah 530, 151 P. 71; *Evans* v. *Oregon Short Line R. Co.*, 37 Utah 431, 108 P. 638. Contributory negligence becomes a question of law when from the facts reasonable men can draw but one in-

ference and that inference points unerringly to the negligence of decedent as contributing to his death. *Compton* v. *Ogden Union Ry. & Depot Co.,* supra; *Lewis* v. *Rio Grande Western R. Co.,* 40 Utah 483, 123 P. 97.

In determining whether decedent was contributorily negligent as a matter of law, the evidence, and all reasonable inferences therefrom, must be viewed in the light most favorable to plaintiff. *Finlayson* v. *Brady,* 121 Utah 204, 240 P. 491; *Mingus* v. *Olsson,* supra.

The accident took place in Orem, Utah on U. S. Highway 91 (which runs approximately north and south) from fifty to one hundred feet north of the point where Center Street running east and west, intersects and terminates with that highway. The highway is 96 feet wide and has six lanes, the eastern three for northbound traffic. The center of the highway is marked by two sets of double lines with a neutral zone of three or four feet between the sets. The eastmost of the three western lanes is marked 1 followed by 2 and three proceeding westward. (See diagram) Each of lanes one and two has a width of 12 feet. Lane 3 has a width of twenty-five feet. To the north of Center Street and west of the highway is the Crown Cafe surrounded by its parking area. To the north of Center Street and east of the highway, and almost directly across from the Crown Cafe is the Orem City Hall. The road is straight and unobstructed. There are no cross-walks nor traffic control devices in the immediate area.

About 1:30 a. m. Mr. and Mrs. Cox (decedent and plaintiff) with Mr. and Mrs. Ferre left the lounge of the Crown Cafe to go home. Two couples whom they had expected to join them there had not arrived. At the moment they left the cafe the overdue friends drove into the surrounding parking area. The group, with the exception of the decedent started to return to the cafe.

Mrs. Ferre testified that Mr. Cox announced, "I am going home." She testified she told plaintiff that decedent was leaving. She further testified,

"We [Mrs. Ferre and plaintiff] turned around, [decedent was walking east across U. S. 91] and I asked him to please come back, and I'd get Alma [Mr. Ferre] to take him home in the car. And Mrs. Cox hollered and told him to come back."

Mrs. Cox (plaintiff) testified that at the moment the group started to return to the cafe Mrs. Ferre said to her, "Are you leaving.—Are you going? Jack (decedent) is leaving." Mrs. Cox testified that she glanced up and saw decedent walking across U. S. 91 going east, apparently on his way home. He was at a point 6 or 7 feet east of the double lines marking the center of the road. (See circle marked "A" on the diagram.) Mrs. Cox testified that she called to him, "Come on back. If you are going home, we will go in the car." She observed him turn and start to walk west toward them. She looked away from decedent and then "heard the screech of brakes and knew that something had happened." At that moment the deceased was struck by the automobile proceeding south. Neither Mrs. Cox nor Mrs. Ferre observed the impact, nor the car prior to the impact. They heard no horn.

Mr. Alma Ferre when in the cafe missed his wife and a moment before the accident returned outside. As he stood at the front of the cafe ("F" on diagram) he observed over the top of his automobile which was parked there, Mr. Cox returning from the east to the west side of the highway. He testified that he first observed him at the spot indicated by the circle marked "A" on the diagram—6 or 7 feet east of the middle of the highway. He testified that he watched decedent on his way back to the point of impact, may have glanced away from him for a second or two, and then observed the "flash of the impact" as it occurred and "seen Jack (decedent) go in the air and land on the cement." He approximates the point of impact at about the dividing

line between lanes ones and two and marked with an "X" on the diagram. He observed no car prior to the impact.

Defendant, Cyril P. Thompson, and his two companions, Leon Wimber and Karl Smith, were traveling from Salt Lake to Springville in a late model Hudson automobile. They were traveling south about 35 to 40 miles per hour in lane number two. All three were in the front seat, defendant driving, Wimber on the right (west) and Smith in the middle. The lights of the car were dimmed to city driving intensity.

Wimber testified,

"* * * I saw a dark shadow step from the left hand side of the automobile which was on the east of us, directly into our lights from the side. He stepped from the side into our lights. I saw a person move, from the east to the west, into our lane of traffic."

Wimber was asked,

"And how far did he get into your lane of traffic, the last time you saw him there?"

He answered,

"Half way across approximately."

Wimber stated Cox appeared to be,

"* * * approximately 15 feet ahead of the car."

He testified that the car swerved sharply to the east and the impact between the car and decedent took place in the lane of traffic in which the car had been moving.

Smith testified that the car was traveling in lane number two. He further said,

"I looked up just about the time we started swerving, and there was a pedestrian and he appeared to be about 15 feet in front of us. * * * He [decedent] appeared to be in the middle of the southbound lane, and at the time of the impact, it [the car] just seemed to pick him up and just drop him off to the side of the fender."

Cyril P. Thompson, defendant, and driver of the automobile testified that the first thing he noticed was decedent stepping into the lights of his automobile. Decedent was headed west across the street. He was asked,

"When you first saw this silhouette in front of you, I will ask you how far ahead of you it was, appeared to be, as far as your vision was concerned?"

He answered,

"Well, I could see the full length of him, and possibly—probably two or three feet of highway. I couldn't specify as to how much highway, but I could see the full height of the man."

When Mr. Thompson observed decedent "stepping to the west" he "immediately swerved the car to the east. * * *"

Decedent was struck by the right front (west) fender of the Thompson car as it swerved to the east. He was lifted onto the hood and dropped off the right side. Cox was dressed in dark clothing. There is testimony by one of the officers who investigated the accident that there was a dark area on the highway at the spot where the accident occurred. Officer Peters who investigated the accident, noted that decedent's breath smelled of liquor. There is evidence that Cox had consumed at least 4 drinks of liquor during the evening.

Small pieces of chrome, broken from the automobile grill, were found in lane two from three to five feet north of Cox's body. There appears to be a slight conflict in the evidence as to the position of decedent's body on the highway after the accident. Officer Peters who investigated the accident and took measurements places the body at a spot approximately fifty feet north of the Center Street north sidewalk and on the line which separates lanes one and two. (Marked "Z" on diagram) Mrs. Cox testified that she really couldn't tell but placed the position of the body just west of the center of the highway and several yards

south of the spot indicated by Peters. (Marked "Y" on diagram.)

Plaintiff argues that there is a conflict in the evidence as to the exact point of impact. She claims such a conflict if resolved in favor of decedent, would be highly probative of his non-negligent conduct. She contends that the ques-

tion is a factual one which should properly have been submitted to the jury. Mr. Alma Ferre, as stated before, approximated the point of impact as being about on the line which separates lanes one and two. ("X" on the diagram.) The testimony of others who observed the mishap placed the point impact somewhere in lane two. The plaintiff's theory is that defendant through excitement negligently swerved into Mr. Cox as he stood in lane one waiting for defendant's car to pass. Considering that Mr. Ferre observed the mishap from the front of the cafe, that he viewed the scene over his parked automobile, that he did not see the car prior to the impact, that he glanced away from the scene for a second or two, that the street was dimly lighted, his testimony and the testimony of others do not conflict in any material degree.

On the evidence set forth, the trial court correctly found decedent contributorily negligent as a matter of law. From a fair appraisal of the evidence reasonable men can draw but one inference and that inference points unerringly to the negligence of the decedent. In response to a call from his wife decedent, who was walking east across a poorly lit highway, turned and walked directly into the path of defendant's automobile. Crossing a highway at a point where there was no marked cross walk, decedent was duty bound to yield the right of way to a vehicle upon the roadway. See 41-6-79 Utah Code Annotated 1953. This he failed to do. He, in addition, apparently failed to look, or having looked failed to see what he should have seen and paid heed to it. He said nothing and did nothing which indicated he was in any way aware of the danger presented. Decedent was properly found negligent as a matter of law. See *Mingus* v. *Olsson*, supra.

Decedent's negligence was a "proximate" or "legal" cause of his death. Generally speaking, the proximate cause of an injury is the primary moving cause without which it would not have been inflicted, but which, in the natural and probable sequence of events, and without the intervention of any new or independent cause,

produces the injury. *Kawaguchi* v. *Bennett,* 112 Utah 442, 189 P. 2d 109; *Strong* v. *Granite Furniture Co.,* 77 Utah 292, 294 P. 303, 78 A. L. R. 465; *Haarstrich* v. *Oregon Short Line R. Co.,* 70 Utah 552, 262 P. 100; *Rollow* v. *Ogden City,* 66 Utah 475, 243 P. 791; *Stone* v. *Union Pac. R. Co.,* 32 Utah 185, 89 P. 715; see also dissent in *Hess* v. *Robinson,* 109 Utah 60, 163 P. 2d 510. The Restatement of the Law of Torts, Vol. 11, Sec. 411, attempts a simple and comprehensive definition as follows:

"The actor's negligent conduct is a legal cause of harm to another [himself] if,

"(a)  his conduct is a substantial factor in bringing about the harm,

"(b)  there is no rule of law relieving the actor from liability because of the manner in which his negligence resulted in the harm."

If decedent had yielded the right of way to defendant's automobile, or if he had looked up the road and seen the approaching car and paid heed to the danger which it presented, the accident would never have happened. It is patent that the negligence of the decedent was a substantial factor in bringing about his death.

The last clear chance doctrine is inapplicable in the present instance. In order for the question of last clear chance to be properly submitted to a jury the evidence must be such as would in all probability reasonably support a finding that there was a fair and clear opportunity, in the exercise of reasonable care, to avoid the injury. It would not be sufficient that it appear from hindsight that by some possible measure the defendant by the "skin of his teeth" could have avoided the injury. See *Morby* v. *Rogers,* 122 Utah 540, 252 P. 2d 231.

This court has adopted as the rule in this state the last clear chance doctrine of Sections 479 and 480 of the Restatement of Torts. See *Compton* v. *Ogden Union Ry. & Depot Co.,* supra. Section 480 reads:

"A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to

have avoided harm therefrom, may recover if, but only if, the defendant (a) knew of the plaintiff's situation, and (b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing·ability to avoid harming the plaintiff."

(See concurring opinion in *Morby* v. *Rogers,* supra, wherein Sec. 480 of the Restatement of Torts is discussed concerning the apparent need for defendant to be antecedently negligent and the suggestion therein made that it is unnecessary to frame a rule in the light of defendant's antecedent negligence.)

Thus the matter was properly withheld from the jury if the evidence, taken in the light most favorable to the plaintiff, would not reasonably and clearly support a finding that (a) defendant knew of decedent's situation of danger, and (b) realized or had reason to realize ■ that plaintiff was inattentive and unlikely to discover his peril in time to avoid harm, and (c) the defendant was thereafter negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming decedent.

In viewing the facts to determine the presence of the requisite elements necessary to invoke the theory of last clear chance we find that defendant was traveling south on U. S. 91 at a speed of 35 to 40 miles per hour. His lights were dimmed to city driving intensity. He first observed decedent when he walked into the cone of light projected from the automobile. There is no definite statement as to the distance the car was from the decedent at the time defendant first observed him crossing in front of the car. On examination by plaintiff's counsel defendant estimated the distance at roughly 19 steps or 57 feet. The testimony of defendant's two companions as to the proximity of the decedent to the automobile would lead one to believe the distance was less than that estimated. But, taking the estimate at its face value, and noting the speed of the automo-

bile, it would have been impossible to halt the car prior to the impact. At 35 miles per hour defendant would travel about 39.25 feet during his reaction time before the brakes were applied. After application of the brakes, assuming they were "good" brakes, the car would travel another 63 feet before coming to a halt. (Figures from a publication of the Utah State Highway Patrol.) The total stopping distance would be 102.25 feet, 45.25 feet more than the 57 feet available. It seems clear that defendant could not have avoided the impact by the application of his brakes.

Being unable to stop, defendant could but attempt to maneuver the car so as to avoid hitting decedent. In answer to the question,

"And what did you do if anything when you saw him [decedent]?"

defendant said,

"Well, I could see him stepping to the west, so I immediately swerved the car to the east, which would have been my left."

The clutch was depressed. The brakes were applied. A reasonable mind could not conclude that defendant was negligent in failing to utilize his then existing ability to avoid harming decedent, if he had any such ability. It was as reasonable, if not more reasonable to turn left as to turn right. Defendant seemingly did all in his power to avoid harming decedent. Certainly there is no evidence that defendant had a last *clear* chance to avoid harming decedent. It was not error to refuse to submit the case to the jury on the theory of last clear chance.

Judgment is affirmed. Costs to respondent.

McDONOUGH, CROCKETT, HENRIOD and WADE, JJ., concur.