313 P.2d 468

Loa JOHNSON, Plaintiff and Appellant,

v.

Elizabeth F. SYME, Administratrix of the Estate of Bailey Syme, deceased, Defendant and Respondent.

No. 8547.

Supreme Court of Utah.

July 2, 1957.

Lee W. Hobbs, Gordon R. Strong, Salt Lake City, for appellant.

C. Preston Allen, Wm. J. O'Connor, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a dismissal of the complaint in an auto accident case. Affirmed with costs to defendant. The dismissal was bottomed on contributory negligence.

At 11 p. m. one night plaintiff drove north at 50 m. p. h. on a four-lane highway, divided by a 35-foot island, and bordered on each side by open farm lands. She collided with a car driven by decedent, who, with his headlights on, drove onto the highway from a road approaching from the right (Draper Road). The driver, whose administratrix is the defendant here, was killed. The car in which he had been riding was estimated to be traveling at about 40 m. p. h. 300 feet from the intersection and did not stop or slow down for the stop sign which was designed to control westbound traffic on the Draper Road, and which was situated about 70 feet from the point of impact. However, at the time of impact the death car was traveling between 10 and 20 m. p. h. The plaintiff was familiar with the intersection, having driven the highway many times.

Plaintiff admitted that she saw nothing until the car in which Mr. Syme was killed appeared directly in front of her at a distance of 20 to 30 feet. This was the case even though plaintiff's own witnesses who were following about a block behind had no difficulty whatever in observing and watching the whole occurrence, including the decedent's car's approach toward the highway from a considerable distance along the Draper Road, through the stop sign, into the intersection and on to the collision and fatality.

Under such circumstances we cannot but conclude that plaintiff either looked and failed to see the obvious, or failed to look at all, and, as a matter of law negligently contributed to her own injuries and the death of another motorist. In other instances of negligent failure to look or to see that which is there to be seen, where the facts were no stronger than those here, we have concluded, as we do here, that

there was contributory negligence as a matter of law which precluded recovery.[1]

McDONOUGH, C. J., and CROCKETT and WORTHEN, JJ., concur.

WADE, Justice.

I dissent.

The facts as stated in the prevailing opinion, though very meager, are in accordance with my understanding of the evidence. However, some additional facts are necessary to understand my contentions.

The collision occurred about 11 o'clock at night on October 8, 1954, at the intersection of the South Draper Road at 13800 South and State Street, or U. S. Highway 91, the main through highway approaching Salt Lake City from the south. State Street at that point is a four-lane highway. The southbound and northbound traffic lanes are divided by a 35-foot strip. The inside traffic lanes which adjoin the dividing strip are 16 feet wide, and the outside lanes are 24 feet wide, making both the north and southbound traffic lanes each 40 feet in width. The South Draper Road intersects the through Highway 91 from the east. About 30 feet east of the through highway pavement on the north side of the South Draper Road is a stop sign and directly west thereof the strip between the north and southbound traffic lanes is paved connecting the north and southbound lanes together. The South Draper Road does not continue west of Highway 91, but a private road does so continue on the north side of the Utah State Prison grounds. So at this point traffic might enter the northbound traffic lanes from the west as well as from the east, and plaintiff was required to keep a lookout for traffic from both directions.

Plaintiff was traveling north in the west traffic lane at about 50 miles per hour. She was acquainted with this highway, and about 600 feet south of the intersection a road sign gave warning to northbound traffic that such intersection was near. As she approached this intersection, plaintiff's view to the east was unobstructed for a considerable distance. Decedent came from the east into this intersection without stopping, where the collision occurred.

We will first review the law covering this situation.

A summary judgment is proper only if the pleadings, depositions and admissions show that there is no genuine issue of material facts and that the moving party is entitled to such a judgment as a matter of

1. Sant v. Miller, 115 Utah 559, 206 P.2d 719; Cederloff v. Whited, 110 Utah 45, 169 P.2d 777; Mingus v. Olsson, 114 Utah 505, 201 P.2d 495; Cox v. Thompson, Utah, 254 P.2d 1047; Wilkinson v. Oregon Short L. R. Co., 35 Utah 110, 99 P. 466; Covington v. Carpenter, 4 Utah 2d 378, 294 P.2d 788.

322

law.[1]. The moving party was entitled to a judgment as a matter of law in this case only if the evidence, and the inferences therefrom when viewed most favorably to plaintiff, will not reasonably support a judgment in her favor. So unless all reasonable minds must agree that plaintiff was guilty of contributory negligence which proximately caused the accident, a jury question was presented and the court erred in summarily disposing of this case.[2]

Section 41–6–99, U.C.A.1953, provides:

"(a) The State Road Commission, with reference to state highways, * * may designate through highways and erect stop signs at specified entrances thereto * * *.

\* \* \* \* \* \*

"(c) Every stop sign shall be located as near as practicable at the nearest line of the crosswalk on the near side of the intersections, or, if there is no crosswalk, then as close as practicable to the nearest line of the roadway.

"(d) Every driver of a vehicle approaching a stop sign shall stop before entering the crosswalk on the near side of the intersection, or, in the event there is no crosswalk, shall stop at a clearly marked stop line, but if none, then at the point nearest the intersecting highway where the driver has a view of approaching traffic on the intersecting highway before entering the intersection, * * *."

This statute clearly indicates that a car approaching a through highway is not necessarily required to stop directly at the stop sign. Where, as in this case, there is no crosswalk and no clearly marked stop line, such driver would meet the requirements of this statute if he stopped his car before it entered the through highway, even though the stop sign is located 30 feet east of the east edge of the pavement thereof.

Section 41–6–74, U.C.A.1953, provides:

"The driver of a vehicle shall stop as required by this act at *the entrance* to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway." (Emphasis added.)

This Section also indicates that under the conditions here existing, the stop would be

---

1. See Rule 56(c), Utah Rules of Civil Procedure.

2. See Nielson v. Mauchley, 115 Utah 68, 202 P.2d 547. Martin v. Stevens, 121 Utah 484, 243 P.2d 747.

proper as long as it was made before the approaching car entered the through highway. It also requires such car to yield the right-of-way to other vehicles on the through highway which are approaching so closely as to constitute an immediate hazard. Thus the driver of a car which is approaching a through highway is by this statute forbidden to enter such highway until the traffic is clear enough so he can do so without creating a danger or hazard to himself or others. This is a clear and understandable provision which undoubtedly gives the driver in the through highway the right-of-way. The question of who has the right-of-way in this situation is much more clear than it is under some other sections of our statutes.[3]

In the recent case of Martin v. Stevens,[4] in distinguishing some Utah cases from that case,[5] Mr. Justice Crockett in the main opinion at page 493 of 121 Utah, at page 751 of 243 P.2d, said:

"* * * Each of them was decided upon the proposition that the circumstances were such *that the driver held to be negligent as a matter of law*, either observed, or *in the exercise of due care should have observed*, the manner in which the other driver was approaching the intersection *and clearly could by ordinary reasonable care have avoided the collision*. Or to state it in other words, *the negligence, or manner of driving, of the other driver was such that the driver* appraising the situation was alerted to it or *by using due care would have been so alerted in time so that by the exercise of ordinary precaution he could have avoided the collision*. And, in each of these cases, this seemed to the court so clearly manifest that reasonable minds could not find to the contrary." (Emphasis added.)

This opinion, after further consideration of the cases referred to in the above quotation, said:

"* * * Although plaintiff had the right of way under both rules above referred to, yet there devolved upon him the duty of due care in observing for other traffic. But in doing so he had the right to assume, and to rely and act on the assumption that others would do likewise; he was not obliged to anticipate either that other drivers would drive negligently, nor fail to accord him his right of way, until in the exercise of due care, he observed, or should have observed, something to warn him that the other driver was driving negligently

3. See Martin v. Stevens, supra, note 2.

4. See Martin v. Stevens, supra, note 2.

5. See Bullock v. Luke, 98 Utah 501, 98 P.2d 350; Sine v. Salt Lake Transportation Co., 106 Utah 289, 147 P.2d 875; Hickok v. Skinner, 113 Utah 1, 190 P.2d 514; Conklin v. Walsh, 113 Utah 276, 193 P.2d 437 and Gren v. Norton, 117 Utah 121, 213 P.2d 356.

or would fail to accord him his right of way. If this principle is not clear in the earlier Utah cases, it is firmly established by the more recent expressions of this court."

The substance of the foregoing rule as applied to the facts of the instant case is that if the circumstances surrounding the accident are such that the plaintiff, in the exercise of reasonable care, should have observed from the manner in which the other driver was approaching the intersection that he was not going to stop or yield the right-of-way at a time when she clearly could have avoided the collision, she was guilty of contributory negligence which proximately caused the accident. But, she had the right to assume and rely and act on the assumption that the other driver would use due care and yield the right-of-way, and she was not obliged to anticipate either that he would drive negligently or fail to yield the right-of-way unless and until in the exercise of due care she should have observed something to warn her that he was driving negligently or was not going to accord her the right-of-way.

These are the rules and principles which I think should govern this situation. In the Martin case, they are supported by the citation and analysis of a number of recent Utah cases.[6] In my opinion, some of the earlier cases cited in that case fail to apply these rules. Possibly such failure resulted from failing to distinguish between mere contributory negligence and such negligence which proximately contributed in causing the accident. Obviously plaintiff was negligent in failing to see the other car approaching the intersection, but such negligence did not proximately contribute in causing the accident unless the circumstances were such that had she seen what in the exercise of due care she should have seen, she would have had a clear opportunity to avoid the accident. So the crucial question is whether, had plaintiff observed what she should have seen, she would have thereby been afforded a clear opportunity to have avoided the accident. If the evidence would support a reasonable finding that no such opportunity would have been afforded her, then we should not hold as a matter of law that her negligence proximately contributed in causing her injury.

In applying the foregoing rules to the facts in this case I shall analyze three fact situations. The first represents the basis of respondent's argument. The second might be objectionable because in a sense it is contrary and more favorable to plaintiff than her own testimony. The third does not conflict with plaintiff's own testimony and gives her the benefit of reasonable in-

6. Hess v. Robinson, 109 Utah 60, 163 P.2d 510; Lowder v. Holley, 120 Utah 231, 233 P.2d 350; Poulsen v. Manness, 121 Utah 269, 241 P.2d 152; Hardman v. Thurman, 121 Utah 143, 239 P.2d 215; Nielson v. Mauchley, supra, note 2.

ferences in her favor as the law requires us to do in this situation.

(1) Respondent's attorneys argue that if plaintiff was driving 50 miles per hour in the west traffic lane for cars traveling north and the decedent was traveling only 10 miles per hour as he drove his car past the stop sign, then plaintiff's car was traveling five times as fast as decedent's car. Since the northbound traffic lanes are 40 feet wide and the stop sign is 30 feet east of the east edge of the through highway pavement, they argue that the decedent's car would travel 70 feet after it passed the stop sign, and during that time plaintiff's car would travel five times 70 feet or 350 feet before the courses of their cars would cross. They claim that she could have made a complete stop at that rate of speed within 184 feet, leaving her 166 feet from the collision. If plaintiff clearly should have been alerted that decedent was not going to stop and yield the right-of-way when he still had 70 feet to travel before the collision and decedent's car traveled that distance at the rate of only 10 miles per hour, then I agree with this argument. However, this argument assumes at least two facts which the evidence does not justify if construed favorably to plaintiff. Such construction of the evidence and the reasonable inferences therefrom, would require a finding (1) that decedent's car was making a sharp reduction of speed when it went past the stop sign, and (2) had she observed all of the movements of decedent's car which due care required of her, she still might have not been alerted to the fact that decedent was not going to yield the right-of-way. The first of these propositions will be discussed later and I will proceed to discuss the second one.

As already mentioned, the place where the stop sign was located, under the facts here shown, did not require decedent to stop until he reached the east edge of the through highway pavement. Until he reached that point his driving did not tend to alert plaintiff to the fact that decedent was not going to stop. This is especially true after dark with the stop sign not facing plaintiff but facing the car approaching the through highway so that she would be unable to see where it was actually located and with decedent's car traveling as slow as 10 miles per hour. Also, while plaintiff was traveling in the west lane for northbound traffic she was not traveling the full 40-foot width of those two northbound traffic lanes west of the east edge of the through highway pavement. The jury could reasonably find that she was traveling in the center of the west northbound traffic lane, which is 16 feet wide. These facts require a reduction of the distance that decedent's car would travel after plaintiff should have in any event been alerted that decedent was not going to yield the right-of-way by 30 feet, the distance between the stop sign and the east edge of the through highway pave-

ment; and eight feet, half of the width of the west northbound traffic lane, leaving only 32 feet for his car to travel to the point where the course of the travel of the two cars would cross. If such distance were traveled at only 10 miles per hour, and plaintiff's car was traveling five times that fast, she would travel only 160 feet to the point where their courses would cross. Under such facts she would not be able to bring her car to a complete stop within the distance she traveled. As to the point where the driver traveling on a through highway should be aware a driver was not going to stop, in Hess v. Robinson,[7] we said:

"  *  *  *  If the ambulance was coming at 50 miles per hour, as one witness testified, it might suggest to a reasonable man that the ambulance probably would not stop, or at least raise a reasonable apprehension of danger. If, on the other hand, as defendants testified, the ambulance was coming only 25 miles per hour (the course being upgrade), an ordinarily prudent man may conclude that the driver had his car under control and would stop as required by law at the stop sign. As to what the circumstances were at the time plaintiff entered the intersection, and as to whether entering under such circumstances was an act from which a person of ordinary prudence

and caution would have foreseen that some injury would likely result, are matters upon which reasonable minds may differ. As such they are properly for the jury.  *  *  *"

The possibilities of her avoiding the collision without a complete stop will be considered later. However, under these circumstances a finding that she was not guilty of negligence which proximately contributed in causing her injury would be reasonable, and a holding against her as a matter of law on that question was not justified.

There is still another reason for the conclusion that the holding that plaintiff's negligence proximately contributed to her injury as a matter of law is not justified. If decedent's car traveled only 10 miles per hour from the east edge of the through highway pavement to the point of impact, that would suggest that he had slowed down and was waiting for her to pass before he drove into her course of travel. Such speed would indicate to plaintiff had she seen decedent's car sooner that the driver intended to yield the right-of-way and not cross plaintiff's course of travel until she had passed. Such action on the part of drivers entering a through highway is not unusual. This conclusion is especially justified in view of the fact that some of plaintiff's testimony indicates that decedent's car was going slower than 10 miles per hour when she first saw it in front of her. In this re-

7.  See Hess v. Robinson, 109 Utah 60, 64–65, 163 P.2d 510, 512.

gard she said it "was just barely moving if not standing still." Later she estimated the other car's speed at 10 to 20 miles per hour. If the other car did crawl across her course just barely moving, it would definitely suggest that the driver was waiting for her to pass before proceeding across her course. In all of these estimates of speed and distances we must keep in mind that they are merely estimates, and particularly that the estimates of plaintiff might be very inaccurate because she saw the other car only a fleeting moment when she was obviously terrified by the imminent danger she faced.

See quotation above from Hess v. Robinson, supra. Also in that case, Mr. Justice Wolfe said:[8]

"* * * Whether he could have ascertained from a view up 31st Street that the driver of the ambulance was not going to stop or at what point he could have so acertained it, if he could have done so at all, until it was too late to stop, is strictly, under the facts of this case, for the jury. He was on an arterial. He could rely on the ambulance stopping before he reached the intersection until he was or should have been definitely aware that it was not going to do so."

(2) There is a distinct conflict in plaintiff's testimony in her deposition and the testimony which plaintiff's attorney stated two other witnesses would testify to. This statement, although not a part of the record, is relied on by counsel for both plaintiff and defendant as well as in the prevailing opinion, so I shall treat it as though it were a part of the record. By such statement these witnesses estimated that decedent's car was traveling about 40 miles per hour, 300 feet east from the intersection, and did not stop or slow down for the stop sign and collided with the northbound car of plaintiff. Such testimony clearly gives a picture of the decedent's car being driven through this stop sign without stopping or slowing down prior to the collision. Although this testimony conflicts with the plaintiff's own testimony as to the speed of plaintiff's car at the time of the collision, I think the jury could reasonably find from this evidence that decedent's car did not reduce its speed before collision. I think that if plaintiff admitted a fact against her interest, of which she had definite knowledge, the jury could not reasonably find facts more favorable to her than her admissions although other witnesses so testified. But, since plaintiff only saw the other car for a fleeting moment of great danger, as compared with the opportunity of the two other witnesses to estimate the speed of the other car, I think the jury could reasonably find their testimony was more accurate than hers.

8. See quotations above from Hess v. Robinson at note 7, and at pages 74-75 of 109 Utah, and at page 516 of 168 P.2d.

328

Under almost identical circumstances that we are now assuming, this court in Hess v. Robinson, supra, held unanimously that a question of fact for the jury was presented. If plaintiff was traveling 50 miles per hour and the decedent traveling 40, and we were to further conclude that plaintiff should have observed, or became alerted to the fact that decedent's car was not going to stop or yield her the right-of-way when it was as far from the point where their courses would cross as 100 feet, still plaintiff would then be within 125 feet of that point. This is far short of the 184 feet within which respondent argues she could have stopped her car. I think it impossible for the ordinary driver to estimate with accuracy at just what point a driver will not heed a stop sign and that 100 feet away from the point where the two cars' courses would cross would be as far as plaintiff could be expected to be alerted to the fact that the other driver was not going to yield her the right-of-way. Mr. Justice Wolfe's statement in his concurring opinion in Hess v. Robinson, supra, that "even at that point if defendant thrust upon him the necessity of exercising a quick choice of action the jury should take that factor of emergency judgment into account in determining whether he was contributorily negligent" is equally applicable to plaintiff's position in this case.

(3) The last fact situation which I will consider is that decedent commenced to reduce his speed from 40 miles per hour for sufficient distance before he entered the intersection so that his car was just barely moving, or traveling only from 10 to 20 miles per hour at the time of the collision in accordance with plaintiff's testimony. Under such conditions the fact that decedent's car was reducing its speed before it entered the intersection would definitely indicate to the plaintiff traveling on the through highway that the driver of the slowing car had it under control and intended to stop or yield the right-of-way to her. Under these circumstances it would be practically impossible for plaintiff to become aware that the other car was not going to stop or yield to her the right-of-way in time so she could avoid the collision. Certainly we cannot hold that under these circumstances she was guilty of negligence which as a matter of law proximately contributed to causing her injuries. In both the prevailing opinion and Mr. Justice Wolfe's concurrence in the Hess case, supra, it was clearly pointed out, even though in that case there was no suggestion that the ambulance which went through the stop sign was reducing its speed, that if the ambulance was traveling at the rate of 25 miles per hour it clearly presented a jury question. In that respect this case is much stronger in favor of a jury question than the facts were in the Hess case, for if the car while approaching the intersection was reducing its speed sufficient to bring the car almost to a stop before the collision, this would indicate that

the driver thereof intended to stop or yield the right-of-way before crossing the course of the through highway car. Obviously such driving of the other car would not clearly indicate to plaintiff that the driver was not going to yield the right-of-way. From each of the foregoing fact situations I conclude that this case presented a question for the jury. Any one of such situations would be sufficient to require a submission to the jury. So I conclude that a jury question was presented by the evidence.