Percy Jones, Appellant, v. Francis Hutchins, Appellee.

**Gen. No. 47,526.**

First District, Third Division.
December 3, 1958.
Rehearing denied December 29, 1958.
Released for publication December 29, 1958.

Jack L. Sachs and John L. Wallace, of Chicago, for plaintiff-appellant.

Wyatt Jacobs, Jacobs, Miller, Rooney & Lederleitner, of Chicago (Joseph B. Lederleitner, William L. Eifrig, of counsel) for defendant-appellee.

PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Plaintiff brought suit against defendant to recover damages for personal injuries alleged to have been sustained by him as the driver of one of several southbound automobiles involved in multiple collisions in heavy traffic on the Outer Drive in Chicago about six-thirty in the evening on October 4, 1954. Trial by jury resulted in a verdict and judgment for defendant, from which plaintiff appeals.

In June 1958 defendant moved to dismiss the appeal on the grounds that there was no judgment in the record, that the report of trial proceedings was not properly before the reviewing court, and that the record on appeal was not filed in apt time. The point is again urged in defendant's brief, but since the first division of this court, before assignment of cases, denied the motion, we need not consider it.

The essential facts disclose that the traffic flow on the Outer Drive between Randolph Street and Belmont Avenue (3200 north) is changed, commencing at Randolph Street at six o'clock in the evening, from a rush-hour pattern to a normal pattern, with an allowable variation of five minutes in the scheduling; the change-over at North Avenue (1600 north) is scheduled for six-thirty. Then the six-lane northbound flow of the rush hour is decreased to a four-lane flow, while the two-lane southbound rush-hour flow is correspondingly increased to a four-lane flow. The testi-

485

mony here is at variance as to whether the change-over had been effected at the time of the accident; plaintiff stated that there were two lanes open for southbound traffic; Cross, a disinterested witness, said that the "traffic was changed after the accident"; defendant, driving south in the second lane from the west curb, spoke of "preparing to pull out to my left," of trying to "get into that other lane," thus suggesting that southbound traffic was no longer confined to a two-lane flow. All the witnesses, however, were agreed that the traffic was heavy, and that cars were lining up in slowly moving or stopped southbound lanes. A Yellow Cab driver came to a sudden stop; behind him Bruce Cross had to stop suddenly from a speed of about forty miles an hour; an unidentified motorist behind Cross swung into another lane of traffic; without stopping, plaintiff's car, the next in line, abruptly crashed into the rear of Cross's car at a speed of about twenty-five miles an hour; and almost immediately thereafter there was another crash as defendant's car struck the rear of plaintiff's.

Cross, a disinterested witness who is not involved in this litigation, testified that he was driving south at about forty miles an hour; that he had to stop abruptly when the taxi ahead of him stopped or slowed down very suddenly; and that after bringing his car to a stop about two feet behind the cab he looked into his rearview mirror and observed Jones's car, about a car length away, coming up behind him at approximately twenty-five miles an hour. Within the space of a second, Jones's car crashed into the rear of Cross's car and pushed it into the taxicab, and almost immediately after that impact Cross heard a crash as Hutchins' car struck the rear of Jones's car.

Jones testified that he called for a friend, Lucille Smith, at 547 Brompton Place at fifteen or twenty minutes past six. From there he drove east on Bromp-

ton Place to Sheridan Road and followed Sheridan until he reached the Drive. The weather was clear, and at this time of evening it was becoming dark. On the Outer Drive, Jones was driving south in the second lane from the west curb. There was a partition in the roadway immediately to his left, and a lane open to his right; there was no lane open to his left going in a southerly direction. His car was proceeding at the rate of about thirty to forty miles an hour, with automobiles before and behind him. Following approximately forty-five feet behind another car, he saw taillights flashing in front of him, indicating cars were stopping, and he testified that he began to pump his brakes to bring his car to rest and also to signal that he was stopping. The car in front of him then swung out of his lane into the traffic lane to his right. Plaintiff stated that he stopped his car about three or four feet behind the Cross car and was stopped there, with his foot on the brake, for four or five seconds, when his automobile was hit in the rear by defendant's car and plaintiff sustained the injuries for which he is asking damages.

■■ It is first argued that the verdict of the jury was against the manifest weight of the evidence. Plaintiff stresses defendant's testimony that as he was preparing to pull over to his left he glanced back momentarily, and that as he did so he heard "a screeching of brakes" and immediately applied his own, but it was too late to avoid crashing into plaintiff's car. Hutchins testified that some time prior to the collision he "was preparing to pull out to" his "left." He saw no signal from the car ahead and, because "there was a blind spot" in his rearview mirror, he glanced back momentarily to assure himself that he could safely make the transition to another lane. The accident occurred in the lane of traffic in which he was driving. The sequence of sudden stoppings already detailed—first

the Yellow Cab, then Cross's car, followed by the car of the unidentified motorist who swung into an adjacent lane, next Jones's car striking Cross's car—abruptly interrupted the flow of cars on the express drive and was the cause of Hutchins' car crashing into Jones's car. Hutchins testified that he heard the screech of brakes and applied his own fully, after which his car moved about the width of the courtroom before coming in contact with Jones's car. No evidence was adduced to show the distance between the Jones's car and the Hutchins' car when Hutchins momentarily looked back. The evidence is not necessarily persuasive that any sign of danger could be perceived by Hutchins before he glanced to the rear; he stated that he never saw any flashing of lights on the back of Jones's car or any other signal that Jones was going to stop; and even during the time that Hutchins' brakes were applied and Jones's car was in his vision he could not tell if the Jones car was moving or standing still. In applying his brakes Hutchins did not react to a visual warning—a car giving a stop signal—but to an auditory warning—the screeching of brakes; he was then, according to his testimony, approximately thirty-three to forty-four feet behind Jones. There is no inherent vice in glancing back momentarily to supplement a rearview mirror blind spot; rather, such a check may well be an additional precaution. "The duty to look has inherent in it the duty to see what is there to be seen, and to pay heed to it." Mingus v. Olsson, 114 Utah 505, 201 P.2d 495. And in a later case, Spackman v. Carson, 117 Utah 390, 216 P.2d 640, the Utah court said: ". . . keeping a lookout ahead does not mean that the gaze must be glued incessantly on every object ahead. Such intenseness, aside from the strain, might actually detract from the necessity of over-all observation. The content of the duty to drive with reasonable care varies with the condition

and circumstances. . . . Unless all reasonable minds *must* say that a party did not use due care under a particular set of circumstances, it is a question for the jury." (Emphasis that of the Utah court.) Under the circumstances here set out, whether or not Hutchins' momentary glance backward constituted negligence was a question of fact for the jury to determine. In denying plaintiff's motion for a new trial, the trial judge, who saw and heard the witnesses, found that "under the evidence of record the jury could reasonably have found or concluded: (1) That the defendant's act in merely glancing back momentarily did not constitute negligence, or (2) That the plaintiff was guilty of contributory negligence in not giving a proper signal to the defendant that he was about to stop; or (3) That in view of the emergency, neither was guilty of negligence." The judge continued: "Upon careful examination of the record, the Court finds that the verdict of the jury has a substantial evidentiary basis in the evidence . . ." We find the reasoning of the trial judge persuasive; under the circumstances we would not be justified in holding that the verdict was contrary to the manifest weight of the evidence.

██ Although the instructions given to the jury do not appear in the abstract, plaintiff places considerable reliance in his appeal on the giving of two instructions, one of which concerns contributory negligence. He contends this was not an issue; however, the record discloses that plaintiff himself tendered an instruction on due care and, having introduced this issue, he is not now in a position to complain of a corresponding instruction. Plaintiff also argues that an instruction with reference to an emergency situation should not have been given. There is no doubt that such a situation resulted from the chain of events hereinbefore related, and accordingly we think that an instruction on that phase of the case was proper.

Other grounds urged for reversal have not been preserved for review. Plaintiff's motion for a new trial nowhere mentions misconduct on the part of defendant's counsel or prejudicial rulings by the trial judge.

We find no convincing reason for reversal, and therefore the judgment of the Circuit Court is affirmed.

Judgment affirmed.

BRYANT and BURKE, JJ., concur.